JOHN ABBOTT, *vs.* E. AND T. MILLS.

When a piece of land is set apart by the proprietors or owners for a public square or common, and individuals purchase lots bordering thereon in the expectation held out by the proprietors, that it shall so remain, such proprietors cannot disappoint the expectations of the purchasers by resuming the land, thus set apart, and appropriating it to any other use.

The enjoyment of a public highway, square or common, or any other common privilege or immunity, for a considerable period of time, *may* afford conclusive evidence of a right in the public so to do.

Where the proprietors of a town pass a vote, setting apart a piece of undivided land as a public square, such vote, though not binding on the proprietors at the time, by reason of some illegality of the proceedings, yet if acquiesced in by them till they have derived a benefit from it, or if recognised by allotting their lands on said square, and laying out village lots bordering thereon, may be given in evidence, to show a dedication of the land in question to the public use.

And the silence of any of the proprietors while people are buying and building on such square, and using it as a public common, will be considered an acquiescence of of such proprietors in the dedication.

Any individual who has sustained an injury from a public nuisance, may maintain an action *on the case* for the injury, against the person erecting or continuing the nuisance.

This was an action of *trespass on the case*, wherein the plaintiff complained, in several counts, of special damage and injury to his land and buildings, by reason of a nuisance upon the public common or highway in front of his said land and buildings, consisting of a printing office erected and continued by the defendants. Plea *not guilty*.

At the trial in the county court the plaintiff introduced evidence showing, that for more than thirty years past the space of ground in the village of Burlington, called the Court House Square, had been left open, and universally known and called a public common, by the name of the court house square ; and that for about fifteen years past the plaintiff had owned and occupied a lot bounded south by main street, and west by said open space or square, whereon the plaintiff had a dwelling house and shop, as alleged in his declaration. He also proved that in 1821, the defendants erected the building complained of upon the south easterly part of said square, nearly west of the northerly part of the plaintiff's premises, and distant from them about the width of a common street in said village; and gave evidence tending to show that by means of said building, which the defendants had ever since continued and occupied, the enjoyment and value of plaintiff's said premises had been considerably lessened and impaired. As part of the evidence to show a dedication of said square to the public as a common, the plaintiff offered in evidence a vote of the proprie-

CHITTENDEN
January,
1831.

Abbott
vs.
Mills et al.

tors of Burlington, dated June 26, 1798, setting apart the square in question for the use of the public. To this the defendants objected, in as much as it did not appear that the vote was authorized by any previous warning for that purpose, and because it was not competent for a mere majority of the proprietors to vote away any portion of the undivided land for such a purpose. The court admitted the evidence, not as conclusive, but to be weighed by the jury in connexion with the other evidence. The plaintiff also gave in evidence a plan of said square, and of the several streets connected therewith, as designated by the proprietors, and afterwards by the select men of Burlington.

The defendants gave in evidence the charter of Burlington; also a statute of 1794, another of 1798, another of 1803, and another of 1805, enabling the authority of towns to take charge of, and lease out, certain public rights; they also gave in evidence a lease from the select men of Burlington to themselves, executed in April, 1821, and the warning, proceedings, and votes, of a town meeting held in Burlington in March, 1821, relating to the matter in question.

The defendants also called witnesses whose testimony tended to show, that the first county buildings were erected obout the year 1797, at which time the court house was placed near the centre of said square, and the jail near the north east corner, on the ground now occupied by part of Thomas' Hotel; that in 1798, a Mr. King, for the purpose of officiating as jailer, and also of keeping a tavern, erected a tavern house contiguous to said jail, south of, and connected with the same; that about 1802, another court house was erected where the present court house stands, and about the same time the jail was separated from the tavern, aforesaid, and removed from the square; that, after this, King continued his tavern stand, and finally sold and conveyed the same as private property; that during the time of King's occupation of said tavern stand, and afterwards, till about 1816, a garden attached to said tavern, extended east and southeasterly from the same, occupying what is now the open street, between said tavern and the buildings east, and extending about as far south as the north line of the court house; that in 1819, one of the owners or occupiers of said tavern stand, erected a shed southerly from said tavern house, and standing partly upon what is now the street aforesaid, and partly upon the square or common west, which shed was continued till within a few years past; and that in most of these arrangements, and especially in the location of said court houses and

Chittenden
January,
1831.

Abbott
vs.
Mills et al.

said original jail and tavern house, the people of Burlington village, and the authority of the town, were consulted and exercised an influence and authority. Nothing from the records of the town was shown connected with these ancient transactions. The defendants also gave in evidence an act of the legislature, passed in 1808, and a lease from the select men to King, executed in pursuance of said act, and covering the ground on which Thomas' Hotel is now situated.

It appeared that the building, erected by defendants, was placed in a line with the tavern house aforesaid and the court house, as directed in the lease to the defendants. The defendants contended, among other things, that the town were proprietors, in virtue of the charter, and the several statutes aforesaid, of several public rights, and that sufficient appeared in the case to show that they did not acquiesce in a permanent and unqualified dedication of the square to the public, as a common or highway ; and hence they insisted, that the lease to the defendants justified the erection and continuance of the building complained of.

The court charged the jury, in reference to this part of the defence, that the town were to be regarded as proprietors of one or more of the public rights named in the charter, and that unless they had acquiesced in the dedication of the square, or that part of it, at least, on which the nuisance was situated, to the public, as a common or highway, till the interest of the public, or that of individuals owning lands upon the borders of said square, required that it should continue open as such common or highway, they might lawfully resume their original right of possession as proprietors ; in which case, their lease to the defendants would entitle the latter to a verdict. But the court further instructed the jury, that their attention must be confined to such acts of the town, or their officers, as were previous to the lease to the defendants, and the town meeting which immediately preceded it ; and that to entitle the acts of the town or their officers to the effect contended for, it was necessary that they should have manifested a claim of right, or at least an intention,on the part of the town, to put an end to the enjoyment of the square, as a public common or highway, whenever it should suit their convenience, and that they should have furnished sufficient evidence of such claim or intention, for the public authorities, or individuals of common prudence and sagacity, purchasing on the borders of said square, to take notice of. The jury returned a verdict for the plaintiff.

To these several decisions of the court,and to the charge to the

CHITTENDEN *January,* 1831.

Abbott
*vs.*
Mills et al.

jury, the defendants excepted, and the case was thereupon re-moved to this Court.

*Adams and Bailey, for the defendants.*—It was decided by the Court that the town of Burlington was to be regarded as proprietor of one or more of the public rights. From this it follows, that the defendants, who claim by lease from the town, have the same right to build on the square, that plaintiff has on his land, unless that right has been lost.

It was contended by the defendants, that the east side of the square had never been dedicated to the public ; and on this point we contend the court erred.

1. In admitting the paper purporting to be a vote of the proprietors, dated in June, 1798.

2. In not giving to the jury some definite time in which a dedication might be presumed from continued use.

3. In their direction to the jury, that their attention was to be confined to acts of the town previous to the lease.

4. In their direction to the jury, that the acts of the town must be accompanied by some claim of right on the part of the town at the time, to give them the effect contended for by the defendants.

5. We contend, that what shall amount to a dedication is in part a question of law, and that the court should have advised the jury on the sufficiency of the evidence to amount to such dedication, if they believed the evidence.

6. We contend, that *case* for private injury will not lie in all cases where the public might abate the nuisance, and that the court should have charged the jury on this point, and that the jury were misled by the silence of the court.

*Mr. Allen, for the plaintiff.*—The vote of the proprietors of the town of Burlington, of 1798, was properly admitted. It is not supposed that a majority of the proprietors by vote can convey away their proprietary interest. But, in connexion with other testimony, it goes to show the dedication of the land to public use. It ought to be received in connexion with the fact, that for more than thirty years the square had been left open, and was understood to be dedicated for public use. There are other facts with which it is connected, as the designation upon the plan of the village, &c.

The town has never exercised any right over the public lands placed under their care for the support of schools, as such, lying

upon the square. This shows that they, in that capacity, never opposed the dedication of it to public use. No act of theirs appears to have been done in relation to the subject of those rights with which they were connected. Their authority over the school lands can be exercised only by their leasing them, with a reservation of rent, for the support of schools. The right they have pretended to exercise is of quite another character. It was carrying into effect a vote of the town in relation to the whole square.

*The opinion of the Court was delivered by*

WILLIAMS, J.—The jury, under the direction of the court, have found that the square or common in front of the plaintiff's house has been dedicated to the public and set apart as a public common or highway ; that the defendants have erected the building thereon which . is complained of; that this building is a nuisance and injury to the lands and buildings of the plaintiff, and have assessed the damages which the plaintiff has sustained thereby. Objections were taken to the decision of the court in admitting some part of the testimony, and also to their charge to the jury. The evidence on which the plaintiff and defendants relied, is detailed in the bill of exceptions. On the part of the plaintiff, it was contended that there was sufficient proof that the common had been dedicated to the public, for a public use, by the original proprietors. It was contended on the part of the defendants that the town of Burlington was to be regarded as proprietor of some one or more of the public rights ; that it had never acquiesced in the dedication, and that the defendants, having a regular lease from the town, had rightfully erected the building complained of as a nuisance, on the land belonging to the proprietors. In accordance with the views of the defendants the court decided, that the town was to be regarded as proprietor of one or more of the public rights ; and unless they had acquiesced in the dedication, the defendants would be entitled to a verdict. The correctness of this part of the decision and charge of the court, is not now in question. If the verdict had been different, the plaintiff would probably have presented this point to the court to be reviewed. The principal question involved in this case is, what shall constitute a dedication of land to the public use, so as to bar the proprietors or owners from recovering it, while it is wanted and occupied for the purpose to which it was dedicated.

The inquiry is important in every view. In the present case property to a considerable amount will be affected by the decis-

CHITTENDEN
January,
1831.

Abbott
vs.
Mills et al.

CHITTENDEN
January,
1831.

Abbott
vs.
Mills et al.

ion, and the principle involved will affect the interest of individuals and the public in almost every town in the state. It is customary in laying out towns, particularly when it is contemplated that they will be places of business, to lay out a square or common, and to locate building lots bordering thereon. And these lots acquire an increased value in consequence of their location. If a village is built up, and individuals buy these lots, erect buildings, and commence the establishing of a village, and make it a common centre for the business of the town, the other lands in town rise in value, of which the proprietors have *all* the advantage. It would then be the height of injustice, and contrary to every principle of good faith, to permit these proprietors to derive this advantage, and then frustrate the expectations held out, by resuming the lands thus set apart, and at a value greatly enhanced in consequence of their having been thus set out.

A dedication of land to the use of the public need not be by deed. The public are not a body capable of taking the fee either by deed or otherwise. The fee must remain either in the original proprietor, or in some persons to whom he shall convey it, and the soil is his or theirs for every use and purpose not inconsistent with the use for which it is dedicated ; and the whole reverts to him or them, divested of every incumbrance, when it ceases to be wanted or occupied for the use to which it is dedicated. This question was lately before the Court, and decided in the case of the *State* vs. *Wilkinson*, 2 *Vt. Rep.* 480.

Neither is it necessary that it should have been appropriated for the use of the public for so long a period of time as that a grant might or should be presumed. It is sufficient if the owner of the soil by some unequivocal act manifests his intention of dedicating the land to a public use, and, in consequence of such intention so manifested, individuals have embarked in any undertakings, or invested property which will be materially affected if such intention should be altered or changed. Whenever a public square or common is marked out and set apart as such by the owners or proprietors, and individuals are induced to purchase lots or lands bordering thereon, in the expectation held out by the proprietors or owners, that it should so remain, or even if there are no such marks placed on the ground, but a map or plan is made, and village lots marked thereon, and sold, as such, it is not competent for the proprietors or owners to disappoint the expectations of the purchasers by resuming the lands thus set apart, and appropriating them to any other use.

In the civil law it is said, " things sacred, religious and holy,
belong to no individual," and that " any man may at his will render his own place religious by making it the depository of a dead
body ;" and it is also said, that if a dead body be laid in a place
by the consent of the owner, the place becomes religious though
he afterwards dissents.—*Cooper's Justinian*, 69. The civil law
in this particular is said by *Bracton* to be the common law in regard to pious donations. In *Sullivan's* history of land titles, he
speaks of burying places, training fields, and common landing places, as having been originally laid out for these purposes, and consecrated to these uses, and as public immunities, or common privileges.

In the case of the *State* vs. *Wilkinson*, above cited, the authorities in relation to highways were referred to and examined ; therefore, it will be unnecessary to re-examine them here. That case
establishes the principle that the use and enjoyment of a common
way for the period of fifteen years, would be sufficient to give an
easement to the public, and subject the person encroaching thereon to an indictment for a nuisance, Neither that case, however,
nor either of the others referred to, establish any particular period
of time, short of which this presumption cannot be inferred. But
it appears clearly from the cases, particularly that of *Rugby-charity* vs. *Merrywether*, 11 *East*, 375, *n.* and the remarks of
*Chambers*, Judge, in *Woodger* vs. *Hadden*, 5 *Taunton*, 126, that
a period short of fifteen years furnishes sufficient ground for such
presumption. Indeed, we should gather from all the cases, that,
as in the civil law, the burying a dead body renders the place
where it is buryed religious or sacred, so the act of throwing open
the property to public use, without any other formality, is sufficient
to establish the fact of a dedication to the public ; and if individuals,in consequence of this act, become interested to have it continue so, as by purchasing property, &c., the owner cannot resume
it. We come then to the conclusion,that the enjoyment of a public highway, square, common, or any other common privilege or
immunity, for a period short of fifteen years, *may* afford conclusive evidence of a right so to do ; and that the charge of the court
is not liable to the objection which has been urged; *viz.* that they
omitted to charge that an enjoyment by the public for the period
of fifteen years, was necessary to extinguish the right of the proprietors.

There is no difficulty in the application of this principle,and in
enforcing it,in all those cases where one or more individuals are the

CHITTENDEN
January,
1831.

Abbott
vs.
Mills et al.
owners of the land, and where they do not act as a corporation, or by vote ; but there is some in applying it to the proprietors of townships, as such, who have their lands in common, and make divisions from time to time as their interests require.   A vote passed at a meeting of the proprietors, duly warned for that purpose, setting apart a common for public buildings, or for any other purpose manifestly for the interest and benefit of the proprietors, would probably be such an act of dedication as would be binding on them.   But in the case under consideration there was no such legal vote.   A division of a town among the proprietors in fact, has been recognised as a legal division, where there has been an acquiescence on the part of the proprietor, although it was neither legal nor binding when first made.   The same principle which has established those divisions may apply to the present case.   The vote of the proprietors passed June 26, 1798, though not binding on the proprietors at the time, as not made at a meeting warned for that purpose, still, if acquiesced in by them until they derive a benefit from it, by the increased value of their other lands in town, and by individuals having purchased under them in consequence of the appearance thus held out by their vote, or if recognised by allotting their lands to the common, treating it as a public common, laying their roads terminating there, and laying out village lots bordering thereon, would be such an act as ought to be binding on the proprietors of the town.   There was no error, therefore, in the decision of the court so admitting the vote of the proprietors in evidence, to be weighed with other evidence, or in their charge to the jury in this part of the case.

It has been urged in argument, that there was no evidence of acquiescence on the part of the town in this dedication.   It was clearly unnecessary to show any particular act of acquiescence on the part of the town.   If towns are to be considered as proprietors, and vested with all the rights which appertain to other proprietors, (of which there are very great doubts,) it must be incumbent upon them to show by some act of theirs, their dissent from the doings of the other proprietors.   The silence of the town, or the silence of any or all the proprietors, while people were buying and building on the square, was a sufficient acquiescence under the circumstances which are set forth in the case.   The jury was correctly charged that the town should have manifested a claim of right, or, at least, an intention to have put an end to the enjoyment of the square, and that they should have furnished some evi-

dence of such an intention, so that individuals of common sagaci-
ty or prudence might have taken notice.

The proceedings in relation to the land and buildings where
the jail was formerly erected, have been cited as evidence that the
town has not so acquiesced.   Of the weight of the evidence intro-
duced into the case the jury were competent judges.   But it ap-
pears clear to me that those proceedings furnish no evidence at
all of the dissent of the town as a proprietor to this dedication ;
on the contrary, that they are strong evidence that the square was
recognised as dedicated to the uses designated in the vote of the
proprietors.   All these proceedings were unnecessary if the town
as proprietors were asserting their right to the land in question. The
doubts which arose as to the powers of the county court, and the
necessity which was felt to apply to the legislature for authority
to enable the select men to convey, (and at that time it was sup-
posed that the powers of the legislature, both as to private and
public rights, were not to be questioned,) go upon the ground that
this land was appropriated to a public use by the proprietors, and
that nothing short of the unlimited powers of the legislature could
change the application.

Another point was made in this case, though not much insisted
on, to wit, that case would not lie in all cases where the public
might abate a nuisance, and that the jury should have been so
charged.   In all cases of nuisance the public may abate the nui-
sance, and if there is no injury to individuals, no action can be
sustained.   But if the nuisance is injurious to the individ-
ual, he may maintain an action for the damage sustained by
him.   It is difficult to see what advantage the defendants could
have derived from this being stated to the jury.   The plaintiff
claimed that the acts of the defendants complained of were not
only a public nuisance, but that they were detrimental to him :
the jury have found so, and have estimated and assessed the dam-
ages he has sustained thereby.   By the most familiar principles
of law he was entitled to this remedy.   Why the defendants
should complain of the silence of the court in the particular men-
tioned, we cannot perceive ; as it would only have been stating to
them, that if the plaintiff had sustained no injury, he could not
maintain the action, though the public might abate the nuisance.

On the whole it appears to us, that there is no error in any of
the proceedings of the county court in this case ; and we are ful-
ly satisfied that the verdict of the jury was right ; that, from the
evidence detailed in the bill of exceptions, there can be no doubt

RRR

CHITTENDEN there was a square properly dedicated to the public, and that it
*January,*
1831. was not competent for the town, nor any of the proprietors, to ap-

Abbott
*vs.*
Mills et al.

propriate it to any other use than the one designated by the vote of the proprietors, and acquiesced in by them.

The judgement of the county court must, therefore, be affirmed.

*Allen,* for plaintiff.

*Adams & Bailey & Marsh,* for defendants.