The opinion of the court was delivered by
Kennedy, J.
The proceeding has been instituted in this case, under a special act of the legislature, passed the 12th of April, 1828, for the purpose of having it enquired into and determined by this court, whether or not the complainants have a right to any part or portion of the value or income of the public wharf or landing place, called the hay scale landing, and the public wharf or landing on the south of and adjoining Callowhill Street, which lie within the incorporated district of the Northern Liberties, and are held in trust by the board of commissioners thereof. That the legal title to these wharves and landing places was vested, and still continues to be so, in the board of commissioners of the incorporated district of the Northern Liberties by the thirty-sixth section of an act of assembly, passed the 16th of March. 1819, is admitted; *43 but the great question raised is, for whose use was it so invested 1 The complainants contend that it was for the use and benefit of all those who were inhabitants within the geographical limits of what was called and known by the name of the Northern Liberties in 1768, or the township of the Northern Liberties in 1796, or should at any time become such, after the first of these dates. The commissioners of the incorporated district of the Northern Liberties allege, on the other hand, that it was vested in them for the use of the public generally, and not particularly for the use of the inhabitants of what was then called the Northern Liberties, or the township of the Northern Liberties at any time, more than for the use of the inhabitants of any other part of the State.
As to the claim of the complainants, notwithstanding their counsel have advocated it with greal zeal and earnestness, and refer to many acts of assembly, as well as books on municipal and international law, in support of it, we still think that they have failed to sustain it.
Among the acts of assembly referred to, none appear to have any bearing upon the question to be solved, unless, perhaps, it may be those of the 20th of February, 1768, (1 Smith’s L. 278,) the 4th of April, 1796, (3 Smith’s L. 274,) the 28th of March, 1803, (4 Smith’s L. 35,) the 1st of April, 1811, 13th section, (5 Smith’s L. 255,) the 22d of March, 1813, (6 Smith’s L. 37,) the 16th of March, 1819, (7 Smith’s L. 177,) and the 6th of March 1820, (7 Smith’s L. 260.) I do not, however, consider it necessary to notice them all; because the act of the 20th of February, 1768, which the complainants make the foundation of their claim, when construed according to the natural import of its terms, and what would seem to have been the intention of the legislature, does not bear them out. They have endeavoured to show that by this act the wharves and public landing places in question, were declared and established to be for the use of the inhabitants of what was therein called the Northern Liberties, and afterwards, the township of the Northern Liberties, in the act of the 4th of April, 1796. For this they rely chiefly upon the title and preamble of the act. The title is, “An act for raising, by way of lottery, the sum of five thousand two hundred and fifty pounds, for the purchasing a public landing in the Northern Liberties, and paving the streets of the city of Philadelphia;” and the preamble thereof, so far as relied on, is in these words, “Whereas it has been represented to the assembly of this province, by petition from sundry inhabitants of the city of Philadelphia, and Liberties thereto adjoining, that the few public landings at the north end of the said city, and in the said Liberties thereof, are scarcely sufficient for the accommodation of its present inhabitants and the king’s barracks, &c., to provide for which, Be it enacted,” &c. Now, if the enacting part of the act had not, in express terms, declared that the landing therein mentioned should be purchased *44 for a different use from that which, it is contended by the counsel for the complainants, the title and preamble thereof indicate, there might have been perhaps, some show of plausibility, at least, in drawing the conclusion which they have done. But the tenth section of the act; as originally published, or the second section thereof, as published in 1 Smith’s L. 278, 279, enacts and declares, “ that the commissioners of the county of Philadelphia, in trust for the public, by and with the consent and approbation of the justices of the peace of the said county, in the court of Quarter Sessions, shall, and they are thereby required and enjoined to buy a landing nearly opposite the said barracks, and receive the deed thereof, in trust/or the public; and further to build, or cause to be built thereon, a good wharf and a pier, for the use of the public.” And by the next succeeding section, it is further made the duty of the said commissioners, with the approbation of three Justices of the Peace of the county, to take care of the landing, by letting it out for the purpose of repairing and improving it for ever thereafter, as the said commissioners and justices, or a majority of them, for the time being, may judge most for the public good.
Now, although it may be, as rather seems to be indicated by the preamble of the act, that the legislature was induced or prompted to act upon this subject by a representation made in regard to it by some of the then inhabitants of the city of Philadelphia, and liberties thereto adjoining, stating that the few landings at the north end of the city and in the liberties thereto, were scarcely sufficient for the accommodation of its inhabitants at that time and the king’s barracks* yet it is clear that the legislature did not view the matter as a private grievance, but as one which concerned the public at large; and therefore expressly declared and directed, that the purchase of the landing should not only be in trust /or the public, but that the deed of conveyance from the vendor to the commissioners for it, should also be taken in trust/or the public; and, again, that the commissioners, after having purchased the landing, should not only build a wharf and pier thereon, for the use of the public, but should likewise for ever thereafter, repair and improve the same as they should judge best for the public good. Thus we see that the public is brought to view and designated as the only beneficiary of the landing as often as it is mentioned, or any thing said in relation to it, almost throughout the act, so that it is impossible to impute this repetition and uniformity of the declaration of the trust in favour of the public, to accident or inadvertence on the part of the legislature, or indeed to any thing but settled design. And so it was taken and considered by subsequent legislatures in their action on the subject. In the preamble to the act of the 4th of April, giving further powers to the commissioners of the county of Philadelphia, in conjunction with three justices of the peace of the county, over the landings and wharves in dispute, it is stated “ that the public *45 landings on the river Delaware, in the township of the Northern Liberties, may be rendered more serviceable and productive by giving further powers to the commissioners of the county of Philadelphia, in whom the same are vested by law for the use of the public.” And so throughout this act they are styled public landings and wharves; and are placed under the control and management of the commissioners of the county and three justices of the same, without regard to or even mention of the inhabitants of the township of the Northern Liberties. And the 3d section enacts, “ that it shall be the duty of the said commissioners to keep the said landings, wharves, and hay scales, in good and perfect order and repair, and to improve the same from time to time in such manner as will most conduce to the public advantage; and whenever the funds which have arisen, or shall arise therefrom, shall, over and above the said repairs and improvements, be sufficient to purchase other landings or wharves, it shall be the duty of the said commissioners, with the consent and approbation of three justices as aforesaid, to make such purchases within the toivnship of the Northern Liberties, and to improve the same; and the landings or wharves so purchased or improved, shall be held under the like trusts and subject to the same rules and regulations as the before mentioned public landings and wharves.” The circumstance of the commissioners being restrained by this section to the purchase of landings and wharves lying within the township of the Northern Liberties as it then stood, has been laid hold of also by the counsel of the complainants, to show that the legislature intended to appropriate not only the profits arising from all the public landings and wharves then within the township of the Northern Liberties, to the use of the inhabitants thereof, but the profits likewise of all that should thereafter be purchased with the funds arising from those then in being. But, clearly, there is no ground whatever for this construction, because the township is not mentioned for the purpose of showing for whose use the purchases should be made; nor are there any terms of appropriation connected with it.* It is introduced merely to designate the space or bounds within which the commissioners should make the purchases enjoined by the act; and it is also perfectly obvious, that if the township had been introduced as the object for whose use the purchase of the landings and wharves was to be made, the next clause declaring that they “ should be held under the like trusts,” would be worse than useless, because it does not enforce or even comport with such construction, and therefore ought not. to have been inserted; but it having been declared in the preamble of the act that the public landings on the Delaware, then within the township of the Northern Liberties, were vested by law in the commissioners of the county for the use of the public, the words “ like trust,” must be considered as having á direct relation thereto, which renders every part of the section perfectly perspicuous as well as consistent *46 with itself. Seeing, then, that these landings and wharves were held for the use of the public, and not for the inhabitants of any particular township, or county, or section of the state, it cannot be questioned but the legislature had the right as often as théy saw fit, to direct and change the appropriation of the funds or profits arising therefrom; and this was done in 1819, as to the public landings and wharves at the end of Coates street, and at the end of Callowhill street. By the 36th section of the act of the 16th of March, passed in' that year, and referred to above, the title to these wharves and landing places last mentioned, was vested in the board of commissioners and their successors, of the incorporated district of the Northern Liberties, “for the use and benefit of the inhabitants of the said district.” The title to them had previously been vested in the commissioners of the county of Philadelphia, for the use of the public. By this same section it is also declared and enacted as follows, that “ the public wharf or landing place, commonly called the Hay scale landing, as also the public wharf or landing place, on the south side of and adjoining Callowhill street, (being the wharves and landing places now in controversy,) heretofore held in trust by the commissioners of the county of Philadelphia, shall be and are hereby vested in the board of commissioners of said district, (meaning the incorporated district of the Northern Liberties,) who shall keep the said landings and wharves in good and perfect order and repair, and to improve the same from time to time in such manner, as will most conduce to the public advantage; and whenever the funds which shall arise therefrom, shall, over and above the said repair and improvements, be sufficient to purchase other landing or wharves, it shall be the duty of the said commissioners to make such purchase within the township of the Northern Liberties, and to improve the same.” Thus, although the title for these wharves and landing places, which are the subject of dispute here, is taken from the commissioners of the county of Philadelphia, and vested in the board of commissioners of the incorporated district of the Northern Liberties, yet we see that the legislature studiously avoided making any change whatever in the use of them; and the commissioners of the incorporated district of the Northern Liberties were thereby expressly required to keep them in good and perfect order and repair, and to improve them from time to time in such manner as should most conduce to the public advantage, without even the slightest allusion to or mention of the inhabitants of the township of the Northern Liberties; and what renders the design of the legislature at that time to continue the use of these latter wharves and landing places to the use of the public generally, the more striking is, that in the preceding part of the section, they have declared that the wharves and public landings at the ,end of Coates and Callowhill streets respectively, should be held for the use and benefit of the inhabitants of the incorporated dis *47 trict of the Northern Liberties, without any direction given to improve them, as should most conduce to the public advantage, as was done in respect to the wharves and landing places in question. There was, however, a change made by this section of the act of 1819, as regarded the place, within which the surplus funds arising from these last mentioned wharves or landing places should be invested by the commissioners in the purchase of other wharves or landing places, by restraining and confining them within the then existing bounds of the township of the Northern Liberties; which clearly excluded the district of Spring Garden and the township of Penn, but included the incorporated district of the Northern Liberties and the district of Kensington; because the township of Penn, which embraces the district of Spring Garden, having been erected and taken off from the township of the Northern Liberties, by a proceeding and order made for that purpose in the Court of Quarter Sessions, of the county of Philadelphia in 1808, and afterwards confirmed and established by the 13th section of the act of Assembly of the 1st of April, 1811, already mentioned, could therefore form no part of the latter in 1819, as it had done previously. And as to the reason for introducing the township of the Northern Liberties in this part of the 36th section of the act of 1819, it is perfectly manifest, that it was done for no other purpose, than to designate and point out to the commissioners of the incorporated district of the Northern Liberties, the place or limits within which they should thereafter invest the surplus funds arising from the Hay-scale landing, and that south of and adjoining to Callowhill street. This being the only reason for mentioning the township of the Noi’thern Liberties, it would then seem to follow of necessity, that its limits at that time were made the measure of the space, within which the investiture of the surplus funds was intended as well as directed to be madq, And here it may be further observed, that the legislature have shown, in this 36th section, as well as in the 35th, immediately preceding, that when they intended to appropriate the use of any wharves, public landings, or other property to the use of the inhabitants of any particular district, township, or part of the state, they did it in express terms and language, susceptible of but one construction; as when they declare that the public wharves or landing places at the end of Coates and Callowhill streets, shall be vested in the board of commissioners and their successors, of the incorporated district of the Northern Liberties, “ for the use and benefit of the inhabitants of the said district;” and in the 35th section, that the building commonly called the town house, together with the market house and stalls erected in Second street, between Coates street and Poplar lane, shall be vested in like manner in the same commissioners, “ for the use of the inhabitants of the said district.”
It has also been said, in the course of their argument, by the coun *48 sel of the complainants, jthat the money with which the wharves and. landing places in controversy were obtained, belonged to the inhabitants of the township of the Northern Liberties, according to its limits in 1768; or at least was raised by them, and that they thereby acquired a resulting trust in those wharves or landing places: but this is a great mistake, for the money with which they were purchased, so far as any thing has been shown in relation to this point, was raised by a lottery under the authority given by the act of 1768, and therefore must be considered public money according to the principle laid down in Ehrenzeller v. The Union Canal Company, 1 Rawle, 189. It was levied by a species of indirect .voluntary assessment on the public, to which the inhabitants of the township of the Northern Liberties may or may not have contributed ; and whether they did or not, is unknown and wholly immaterial. But, besides, it was expressly declared by the legislature, that the money should be raised for the purpose of being invested . in a purchase, to be made for the benefit and use of the public, and not for the inhabitants of any particular township or district; and unless we disregard the plain meaning of all the acts of assembly bearing on this matter, which seem to be couched in terms so perfectly free from all ambiguity, that it is impossible to misapprehend their true import, we cannot avoid pronouncing a judgment against the complainants.
We are therefore decidedly of opinion, that the public wharf or landing place, called the Hay-scale landing, and the public wharf or landing place on the south of and adjoining Callowhill street, were vested by the act of 1819, in the board of commissioners of the incorporated district of the Northern Liberties in trust for the use of the public generally; and that the complainants, either collectively or separately, have no claims or rights to any part or portion of the value or income thereof. Whereupon it is ordered and adjudged by this court, that the petitions of the complainants be dismissed, and that they pay all the costs which have accrued in this case.