## The City of Dubuque v. Maloney.

1. Streets, avenues and public squares in ·Dubuque. The General Government, by laying off the land on which the city of Dubuque is situated, into lots, streets, out-lots, avenues and public squares, (Acts of Congress, approved July 2, 1836, and March 12, 1837,) and by the sale of lots to the occupants thereof, and others, dedicated such streets, avenues and public squares to the public use in such manner as to be forever concluded from setting up any title to the same. The legal title to the soil, subject to the public easement, is vested in the owners of the lots on each side of said streets.

2. Rights of purchasers. When the owner of land lays out a town thereon, and sells lots to purchasers with reference to the plat thereof, the purchasers of such lots, acquire, as appurtenant thereto, every

The City of Dubuque v. Maloney.

easement, privilege and advantage, represented by such plat as belonging to the lot sold.

3. EASEMENT. An easement is an advantage or privilege in lands, without profit, existing distinct from an ownership in the soil.

4. HIGHWAY. A street or highway is an easement, which comprehends only the right of every individual in the community to pass and repass over the same, with the incidental right of the public to do all things necessary to keep it in repair.

5. CORPORATIONS. The municipal corporation does not own, either in trust for the public, or in its own right, the freehold or the easement of the streets and squares of a town or city, but as the representative of the public, it may regulate the public use of such streets and squares.

6. EASEMENTS AND HIGHWAYS DISCUSSED. The rights of adjoining owners, the public, and municipal corporations presented and discussed.

*Appeal from Dubuque District Court.*

THURSDAY, OCTOBER 27.

The material facts are fully stated in the opinion of the court.

*Wilson, Utley & Doud,* for the appellant.

I. Main street, the public squares and other streets of Dubuque, were laid off by the General Government. The lots alone were sold—the title in fee of the soil in the streets yet remains in the General Government. See the acts of Congress, approved July 2, 1836, and March 3, 1837, in the Code of 1851, page 536–538. *The City of Louisville* v. *The Bank of the United States, et al,* 3 B. Mon. 138–158; 2 Met. 147–151; 2 Ib. 457–467; *In the matter of Seventeenth Street,* 1 Wend. 268; also 2 Ib. 473; 8 Ib. 106; 3 Hill 567; 2 Smith's Lead. C. 212–215. Whatever control the city may have over the streets, must be exercised by virtue of its corporate capacity. 3 Penrose & Watts 263; 1 N. H. 16; 6 Mass. 456; 2 Ib. 127.

II. The sale of land bounded by a highway or street, raises a strong presumption of an intent to convey the soil to the center of the highway; and it will pass, unless the highway be clearly excluded. *Nitter* v. *Harvey,* 1 McCord 67; *New-*

*hall* v. *Iverson*, 8 Cush. 565; *Johnson* v. *Anderson*, 18 Maine 77; *Chatham* v. *Brainard*, 11 Conn. 69; *Adams* v. *Rivers*, 11 Barb. 393–414; 24 Wend. 453; 2 Smith's Lead. C. 217–220. The fee of the highway belongs to the owner of the adjoining ground, and the sovereign has only the right of passage. 3 John. 361; *Gidney* v. *Earl*, 12 Wend. 98; *Stackpole* v. *Healy*, 16 Mass. 33; 15 John. 452; 2 Ib. 362. But if the highway be clearly excluded by a description of the property conveyed, by metes and distances which bring it only to the edge of the highway, the fee of the soil of such highway remains in the former owner. *Jackson* v. *Hathaway*, 15 John. 447; *Cole* v. *Haynes*, 22 Ver. 558; *Sunderland* v. *Jackson*, 32 Maine 83; 3 Maine 507; *Whitbeck* v. *Cook*, 15 John 482; *Peck* v. *Smith*, 1 Conn. 103.

III. The owners of lots adjoining streets, dedicated to the public by the Government of the United States, have an estate in such streets greater than an easement. The grantees of the lots, are purchasers, by implied covenant, from the grantor, of the right to have that interval of ground left open forever; and though the city or state were to vacate the roadway, the lot owners could not thereby be divested of the right to have the space left open as a street forever. 1 Wend. 268; 13 Mass. 256; 10 Pet. 663, 720; 8 Met. 260; 3 B. Mon. 25; 2 Smith's Lead. C. 218.

*W. T. Barker*, for the appellee.

I. The defendant is not the owner in fee of the soil in the streets adjoining his lots. The patent from the United States conveys only a title to the land included within the limits of the lots as platted. It is not like the case of an appropriation for a highway. *Davis* v. *Rainsford*, 17 Mass. 207; *Tyler* v. *Hammond*, 11 Pick. 193; *Bingham* v. *Doane*, 9 Ohio 165; *Walker* v. *Pearson*, 40 Maine 152; *Jackson* v. *Hathaway*, 15 John. 447; *Buel* v. *Clark*, 1 Root 49; *Brown* v. *Freeman*, Ib. 18; *Palmer* v. *Daugherty*, 33 Maine 502.

II. The rights of cities in streets are greater than the rights of the public in ordinary highways. *Barter* v. *The*

*Commonwealth,* 3 Penrose & Watts 253; *Haight* v. *The City of Keokuk,* 4 Iowa 199; *In the matter of Lewis Street,* 2 Wend. 473; *New Orleans* v. *The United States,* 10 Peters 663; *Drake* v. *The Hudson River Railroad Company,* 7 Barb. 525.

III. The act incorporating the city of Dubuque, vested in the corporation all the title to the streets which had in any manner been acquired by the public.

IV. The title of the United States passed to the public by the acts of Congress laying out the city of Dubuque, and subsequent acts of the government, showing plainly an intent to dedicate the streets to the public use. *New Orleans* v. *The United States,* 10 Peters 710; *The City of Cincinnati* v. *The lessee of White,* 6 Ib. 431; *Barclay* v. *Howell's lessee,* Ib. 498; *Haight* v. *The City of Keokuk,* 4 Iowa 199.

STOCKTON, J.—By virtue of the act of Congress, approved July 2d, 1836, (and the act amendatory thereto, approved March 3d, 1837,) entitled, " an act for laying off the towns of Fort Madison and Burlington, in the county of Des Moines, and the towns of Belleview, Dubuque and Peru, in the county of Dubuque," (see Code, p. 535,) the Government of the United States laid off the town of Dubuque into town lots, streets, avenues, public squares and out-lots, and sold the same to the occupiers thereof, entitled to the same by improvement and pre-emption, and to other purchasers.

The defendant became the purchaser of lot No. 73, at the corner of Main and Third streets, in said city, and received a patent from the United States therefor, in which the lot is described as "in lot No. 73, of the first class, of the town of Dubuque, containing seventeen hundredths of an acre, according to the official plat of the survey of said town, returned to the General Land Office." The patent is dated November 29th, 1854.

Third street is sixty-four feet wide including the side walks, which are twelve feet wide within the curb-stone. There was a cistern in Third street, about one half of which

was within the line of the sidewalk. It was built of brick and cement, and was twelve feet in diameter and fourteen feet deep. It was entirely below the surface of the street, so that it could not be discerned. In relation to the cistern, Rogers, a witness for the plaintiff, testified: "I built the cistern; a great part of it was within the side walk. The city in part contracted with me to build it, and paid me in part; part was paid by citizens. Vandever employed me, and handed to me a subscription, part of which was paid. It cost about $255. The city may have paid me one half. The cistern may have been four feet from the wall of the building." On his cross examination the witness stated that the cistern was built in the fall of 1856; that Maloney, the defendant, objected to its being built, and said that he wished ed to excavate under the sidewalk, and the cistern would be a damage to his building.

In the year 1857, the defendant erected a building on his lot, on the line of Main and Third streets. In making the excavation for his cellar and foundation wall, and in taking the earth from under the sidewalk, he exposed the cistern; and it being at the time full of water; the walls burst asunder, and the cistern was destroyed.

This action is brought to recover damages alleged to have been sustained by the city from the acts of the defendant. The first count is for breaking and entering a certain close of the plaintiff, with force and arms, and taking, digging up and carrying away large quantities of earth, and for breaking and destroying a cistern, the property of the plaintiff. The second count charges that the plaintiff being the owner, and possessed of a certain water cistern on Third street, in the city of Dubuque, of great value, &c., the defendant on, &c., broke, injured and destroyed, the same, to the damage of plaintiff, &c. The third count charges that plaintiff was seized and possessed of certain streets, known as Main street and Third street in the city of Dubuque, and defendant wrongfully entered upon said streets, and at or near their intersection dug up and carried away the earth for a space of

ten feet in width and one hundred and fourteen feet in length and twelve feet in depth, on Third street, and a like excavation on Main street and within the line of said streets, endangering thereby the safety of travelers on said streets, and destroying a cistern there situated, the property of the plaintiff. The damages are laid at $3000. There was a verdict and judgment for the plaintiff, of $75.

By laying off the land on which the city of Dubuque is situated, into lots, streets, avenues, public squares and outlots, as represented upon the plat returned to the General Land Office, and by the sale of the lots to the occupants thereof, and to other purchasers, the streets of the town of Dubuque were dedicated to public use, in such sense that the. General Government, as the proprietor, was forever concluded from exercising any authority or setting up any title to the same.

If the owner of land lays out a town, and exhibits a plan thereof, on which are represented various plats of spare or vacant ground, such as streets, alleys, squares, quays, &c., and the lots are sold with reference to the plan, the purchasers of the lots acquire, as appurtenant to the same, every easement, privilege and advantage which the plan represents as belonging to them. The sale and conveyance imply a grant or covenant to the purchasers that the streets and other public places indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor, inconsistent with such use. *Rowan's Exec.* v. *Town of Portland,* 8 B. Mon. 232; *Livingston* v. *Mayor of New York,* 8 Wend. 106; *Wyman* v. *Same,* 11 Ib. 487. An easement is defined to be a liberty, privilege, or advantage in land, without profit, existing distinct from an ownership in the soil. *Pomeroy* v. *Mills,* 3 Vermont 279. A street or highway is a public easement, open to the community. The dedication thereof to the public, does not operate as a grant, but as an estoppel *in pais* of the owner from resuming the exclusive use of his own property, or indeed any use inconsistent with the public use. It

precludes the party making the appropriation, from re-opening any right over the land, at all events, so long as it remains in public use. *Cincinnati* v. *White's lessee*, 6 Pet. 431.

A highway is defined to be nothing but an easement, comprehending merely the right of all the individuals in the community to pass and re-pass, with the incidental right of the public to do all acts necessary to keep it in repair. The easement does not comprehend any interest in the soil, nor give the public the legal possession of it; the right of freehold is not touched by establishing a highway, but continues in the original owner of the land, in the same manner it was before the highway was established subject to the easement. *Peck* v. *Smith*, 1 Conn. 103; *Webber* v. *Eastern Railroad Company*, 2 Met. 149; *Atkins* v. *Boardman*, Ib. 457.

Lord Coke (2 Inst. 705,) says "the fee of the road is in the lord of the manor, or the land owners on both sides of the way." 1 Burrows 145. A man may have a right of way without having an interest in the fee; and if such an one interfere with the soil under the surface or uses it in any other way than for passing or repassing, he is answerable as a trespasser to the owner of the fee. The public have the right of passing and repassing, and of digging and felling trees for the repair of the road, but subject to this easement, the exclusive ownership of the soil—the freehold and all its profits, remains in him who owned the soil before the highway was laid out, and he may maintain trespass or waste, or recover possession, subject to the easement. *Jackson* v. *Hathaway*, 15 John. 447. In *Perley* v. *Chandler*, 6 Mass. 454, the owner of the adjoining ground brought an action of trespass for stopping up a drain under a road, and it was held that he was entitled to the fee of the road subject to the easement, and might sink a drain, or construct a water course for a mill across the road beneath the surface, as he owned on both sides; and might maintain trespass for disturbing them.

So it is held that the herbage belongs exclusively to the owner of the soil, and he may maintain trespass against one

who puts his cattle into the highway to graze. So he may against one who builds upon, or otherwise obstructs a highway; or who instead of passing along it, remains standing upon it, as a strolling musician, refusing to depart. *Adams* v. *Rivers*, 11 Barb. S. C. 393; *Stackpole* v. *Healey*, 16 Mass. 33; *Griffin* v. *Martin*, 7 Barb. S. C. 298; *Lewis* v. *Jones*, 1 Barr 336; *Peck* v. *Smith*, 1 Conn. 103. And although those whose duty it is to repair, may cut trees upon the road for that purpose, yet they are trespassers if they cut them for their own use. *Makepeace* v. *Worden*, 1 N. H. 16; *Babcock* v. *Lamb & Doty*, 1 Cow. 238; *Jackson* v. *Hathaway*, 15 John. 447.

In *City of Cincinnati* v. *White*, 6 Pet. 431, it is said that " all public dedications must be considered with reference to the use for which they are made; and streets in a town or city, may require a more enlarged right over the use of the land, in order to carry into effect the purposes intended than may be necessary for an appropriation for a highway in the country." But the fact that the street dedicated to public use is within an incorporated city, makes no difference as to the ownership of the soil. The title remains in the owner of the fee, and except where there has been a regular conveyance, or a legislative transfer, is never in the corporation. *Phil. & Trenton R. R. Co.* v. ———, 6 Wheat. 25; *City of Louisville* v. *Bank U. S.*, 3 B. Mon. 138, 158.

Whatever control the corporation may have, is held to be by virtue of its corporate charter, and of the right conferred by its charter to regulate and improve the streets, and to make such use of the soil as may conduce to public convenience and enjoyment. *Barter* v. *The Commonwealth*, 3 Pen. & Watts 253.

There is no authority for holding, that after the sale of the lots in the town of Dubuque, according to the plat thereof made by direction of the Surveyor Genereal, under authority of the act of Congress, the title of the ground occupied by the streets, was vested in the public, or in the city corporation as the truseee of the public.

It was within the discretion of the government as the proprietor of the soil, in making sale of the lots to sell only to the line of the street. But if lots are sold by their number on a plat, and if the lots are bounded by a street or highway, that circumstance raises a strong presumption of an intent to pass the soil to the centre of the street or highway, and it will so pass accordingly, unless the highway be clearly excluded. *Witter* v. *Harvey*, 1 McCord 67 ; *Newhall* v. *Iveson*, 8 Cushing 565 : *Adams* v. *Rivers*, 11 Barb. S. C. 393; *Adams* v. *R. R. Co.*, Ib. 414 ; 3 Kent's Com. 433, 434 ; *Town of Chatham* v. *Brainard*, 11 Com. 60.

The presumption is, says Mr. Chancellor Kent, 3 Com. 432, that the owners of the land on each side go to the centre of the road, and they have the exclusive right to the soil, subject to the right of passage in the public. Being owners of the soil, they have a right to all ordinary remedies for the freehold. Farther on he says :

"The established inference of law is, that a conveyance of land bounded on a public highway, carries with it the fee to the center of the road, as part and parcel of the grant. The idea of an intention in a grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land, is never to be presumed. It would be contrary to the universal practice." 3 Kent's Com. 433.

In *Peck* v. *Smith*, 1 Conn. 103, it is said that there is no instance where the fee of highway as distinct from the adjoining land was retained by the vendor. It would require an express declaration, or something equivalent thereto, to sustain such an inference ; and it may be considered, as a general rule, that a grant of land bounded upon a highway or a river, carries the fee in the highway or river to the center of it, provided the grantor at the time owned to the center, and there be no words or specific description to show a contrary intent. *Brown* v. *Kennedy*, 5 Harr. & Johns. 195; *Cortelyon* v. *Van Brunt*, 2 Johns. 357 ; *Jackson* v. *Hathaway*, 15 Ib. 447 ; *Canal Com.* v. *The People*, 5 Wend.

423; *Lunt* v. *Holland,* 14 Mass. 149; *Hatch* v. *Dwight,* 17 Ib. 289; *Claremont* v. *Carleton,* 2 N. H. 369; *Morrison* v. *Keen,* 3 Greenleaf, 474.

In *Adams* v. *Rivers,* 11 Barb. S. C. 390, the plaintiff proved, *prima facie,* that he owned and possessed the lots mentioned in the complaint. The court said: "These lots being bounded by public streets, extended to the centre of the street. This is, undoubtedly, the legal presumption."

In *Adams* v. *Saratoga & Washington R. R. Co.,* 11 Barb. S. C., 414, 451, it is said that, "In the city of New York, the legal title to the soil of the streets is vested in the corporation. (*Drake* v. *Hudson R. R. R. Co.,* 7 Barb. 508.) In the country, and other cities and towns, the legal presumption is, that the fee is in the owner of the adjoining lots. This has always been the law as understood and expounded by the courts of this state."

In *Griffin* v. *Martin,* 7 Barb. 297; HAND, J., says, "The public have but a servitude or easement over private lands taken for highways. If that be so, the public and individuals have no right to or power over it, except as a way. If they can depasture it, they can dig up the soil, build upon it, and cut down trees. If they can take the grass, I see no reason why they may not put it to other uses. And if taking the land for a highway gives to others a right to depasture it, then it is not true that the private property of one cannot be taken for the private use of another."

If the doctrine of these authorities is correct, we are at a loss to conceive by what right the city of Dubuque has brought the present action. By the act of dedication, the government of the United States vested no title to the streets in the corporation; subject to the public easement, the fee of the streets is in the owner of the adjoining lots. The city, by virtue of its corporate authority, has the power to regulate the public use of the streets and squares, and may be regarded as the representative of the public for the purpose of vindicating the public right. But neither the

ownership of the soil, nor of the easement, is in the corporation.

The case of *The Trustees of Watertown* v. *Cowen & Bagg*, 4 Paige 510, was an application for an injunction by the corporation, to restrain the defendants from building upon a public square and street, in the village of Watertown.   On an objection that the suit was improperly brought in the name of the corporation, WALWORTH, Chancellor, said: "I do not feel disposed to go the length of holding that the legal title to the land is vested in the corporation of the village, yet I can see no valid objection to considering the corporation as the proper representative of the equitable right of the inhabitants of the village to the use of the public square, so as to authorize the filing of a bill by the corporation, to protect those equitable rights against the erection of this nuisance." See, also, *Abbott* v. *Mills*, 3 Ver. 521; *State* v. *Catlin*, 3 Ib. 580; *Rung* v. *Shoenberger*, 2 Watts 23.

In *Spring Garden* v. *Northern Liberties*, 1 Wharton 25, it was decided that an appropriation to the public use, does not vest a beneficiary interest in the public authorities of the district.   And in *State of Alabama* v. *Mayor and Aldermen of Mobile*, 5 Porter 279, that if a street be laid out by the legislature, or otherwise dedicated as a public highway, the city authorities have no right to build a market house upon it, and that such an erection is a public nuisance.   The corporation can employ it in no way different from the object for which it was designed.   *Commonwealth* v. *Alberger*, 1 Wharton, 469.

The charge of the court to the jury assumes as the basis of the plaintiff's right to recover in this action:   1, That the city of Dubuque as the trustee of the public, holds the fee simple title of the land included in the streets of that city; and 2, That the defendant, by virtue of his patent from the United States, took the fee to no part of the street, and that his lot is bounded by the line, and not by the center of the street.

We have seen that neither of these propositions can be

sustained. That on the contrary thereof, the city by virtue of the dedication by the United States, took no title to the streets; that it has no right to use them for its own purposes, nor to employ them for any purpose different from that for which they were designed; that, subject to the public easement, the owner of the adjoining lots is the absolute owner of the soil of the streets, and retains his exclusive right in all mines, quarries, springs of water, timber and earth, for every purpose not inconsistent with the public right of way.

Neither the city, nor any individual had the right, against the will or without the consent of the owner of the adjoining lot, to construct a cistern under the street or sidewalk; and if the defendant for his own convenience, or to suit his own purpose, excavated the earth from the sidewalk opposite his lot, and in so doing injured or destroyed the cistern, there is no principle on which he can be made liable, in an action by the city, to recover damages for the injury.

Judgment reversed.