STEVENSON *v.* MAYOR AND ALDERMEN OF THE CITY OF CHATTANOOGA.

*(Circuit Court, E. D. Tennessee, S. D.   April 17, 1884.)*

EASEMENT—RIGHTS IMPLIEDLY RESERVED BY OWNER IN STREET DEDICATED TO A CITY.

    The municipal authorities of a town cannot deprive the owner of land, who has simply dedicated to the public an easement to pass over it, of any use of the land dedicated not inconsistent with the full enjoyment of the easement.

In Equity.

*Key & Richmond*, for complainant.

*H. M. Wiltse*, for respondent.

KEY, J.   Complainant alleges that he is the owner of a parcel of land lying on the Tennessee river, in the northern part of the city of Chattanooga.   Three of the streets of the city—Market, Broad, and Chestnut—run, as he insists, to this land, but have not been extended through it to the river.   He says that for many years he has used this real estate as a wharf, and has expended large sums of money in preparing and improving it, and keeping it in repair, for the purposes to which it has been appropriated.   The public, for many years, have used it as a wharf, and he says he has charged and received wharfage for all such goods and merchandise as have been discharged, from vessels navigating the river, upon the wharf.

It appears that on May 18, 1883, the corporate authorities of Chattanooga passed the following ordinance:

An ordinance to provide for defining the streets of the city at the Tennessee river, and to make it a misdemeanor for any person to collect wharfage within the limits of any street.

Section 1. Be it ordained, by the mayor and aldermen of the city of Chattannoga, that the city engineer shall cause stakes or monuments to be set so as to indicate the boundaries of streets at the Tennessee river.

Sec. 2. Be it further ordained, that it shall be a misdemeanor for any person or company or incorporation to collect wharfage, or in any way interfere with or obstruct the discharge of cargoes of freight, within the boundaries of streets as so indicated, or with the removal of same after it is discharged, on any pretense or claim of a right to wharfage on such freight.

Sec. 3. Be it further ordained, that it shall be a misdemeanor for any person to charge or collect any wharfage or towage for the landing of any boat or craft within the limits of any street, as defined by the stakes or monuments above provided for, or in any way to interfere with the landing of

boats or the discharge of their cargoes within such streets, on any claim or pretext of a right to collect wharfage or towage.

Sec. 4. Be it further ordained, that any person convicted of any of the offenses herein described shall be subject to a fine of not less than ten dollars nor more than fifty dollars, at the discretion of the recorder, for each and every offense.

Sec. 5. Be it further ordained, that this ordinance shall take effect and be in force from the date of its passage.

It is quite evident that the complainant never conveyed that part of this property claimed for the streets to the city, or that the city, by any authoritive act, had appropriated the land to that purpose, or paid complainant its value. But, I think, it is equally clear that the public has used these streets and regarded them as such. Buildings have been erected upon the blocks adjoining them, but not upon the streets. They have been used and are necessary as approaches to the wharf, and to close them would virtually cut the public off from the wharf, and Market street leads to, and for many years has been used as, an approach to a public ferry. Besides all this, complainant, in some of his deeds of lease and conveyance, has described the property as embracing these streets. I conclude, therefore, that the land occupied by these streets was dedicated by complainant to that use, or the public has become entitled so to use them by prescription. But this use is a mere easement. The legal title remains in complainant; or, if not, the title would revert to him were the streets discontinued, and the public cease to use them as public highways. The city or the public are not entitled to their use for any other purpose. The law of the state imposes upon the defendant the duty of keeping these streets in repair, and free from obstruction, so that the people may pass over them conveniently. But the manifest purpose of the ordinance is, not to open and improve these streets for travel, but it is to convert the *termini* of the streets at the river into wharves, at which boats and other water-craft may land and discharge their cargoes without the payment of wharfage or other charge. The effect of the ordinance is, after the complainant, by the authority of the city, had established and improved his wharves, and opened streets to them through his lands, to take away the value and use of his wharves, by converting the streets which he had dedicated to the public for one use, to another and different purpose. Substantially, it is depriving him of the use of his property without compensation. I think it plain and palpable that this cannot be done. If the defendant allow freights to be discharged on these streets, and boats to be landed at them, it cannot prevent complainant from entering thereon and collecting such wharfage as the law and ordinances of the city authorize. He has the right to enter upon those streets to collect the fees or charges, if defendant direct or permit the vessels and goods to land there. He has parted with no right to the land thus used as streets, except that he has given it to the public to use as a highway. He has not given to the city or the public the right to use it as a free

wharf. It would be inequitable and violative of his constitutional rights, both state and federal, thus to deprive him of the value and use of his property; and the provisions of the ordinance referred to, so far as they undertake to do this, are void.

The defendant will be perpetually enjoined from enforcing, as against the complainant, the provisions of the second, third, and fourth sections of the ordinance of May 18, 1883, or from otherwise preventing him from collecting such wharfage as he may be entitled to.

The court being of the opinion that defendant is liable for the amount of such actual wharfage and towage as complainant has been prevented from collecting by reason of the provisions of the ordinance mentioned, the clerk of this court, as special commissioner, will hear proof, and report, at as early a day as convenient, what the amount of such wharfage and towage is; bond and security having been required of the defendant for the payment thereof at the commencement of this litigation, upon condition that defendant failed therein.

--------

(May 9, 1884.)

Motion for an Attachment for Disobedience to an Injunction.

*Key & Richmond*, for complainant.

*H. M. Wiltse*, for respondent.

KEY, J. The bill was filed in this cause, alleging that respondent, without authority, had run Market, Broad, and Chestnut streets through his wharf property to the Tennessee river; had ordained that steam-boats and other water-craft might land at the ends of these streets and discharge their cargoes upon the streets, and has prevented complainant's agents from entering thereon to collect wharfage. A decree was but a few days ago pronounced in the cause, declaring that the streets named had, by dedication, been extended to the river, and the public had an easement therein,—that is, to use them as streets,—but that respondent could not prevent complainant and his agents from entering upon these streets and collecting wharfage upon such merchandise as might be discharged thereon; and respondent was enjoined from doing so. Defendant now seems to have changed front, and has declared that boats shall not land and load and unload their cargoes at and upon these streets, and has arrested the master of a boat who has done so. This, complainant alleges, is a violation of the injunction, and he has asked that the mayor of the city, by whose order the arrest was made, be attached for contempt.

Whatever bearing the decree may have on the present attitude of the parties, it cannot be said that the point involved in this contention was explicitly decided in the original cause, and hence there is no ground for the attachment asked; but as the decree alluded to is not final, and as the parties desire a construction of its terms in so far as the present state of the case is concerned, and as the petition and answer raise the question, we may as well do so.

It must be remembered that the parties are in a court of equity. It has already been decided that respondent had no right to throw open the streets above mentioned as wharves, and to prevent complainant from collecting wharfage upon them. Without any change of circumstances, or any difference in the condition of things in the neighborhood of the property, the streets are closed against the landing of boats and the discharge of freights. The position of things is reversed, and for no apparent reason, except that the streets are not allowed to be barred against the entrance of complainant. So soon as they are opened to him they are closed against boats and freight. This is personal legislation, if it may be called legislation, intended to operate against the complainant. If its purpose be to injure and destroy his property or its value, it is but a continuation of the object already expressly enjoined, and should not be tolerated unless the action of respondent is authorized by law.

It should be kept in mind that respondent has paid nothing for these streets, so far as they extend through complainant's property. He converted his property into a wharf and allowed the streets to run through it so that the public might reach the wharf and the river. There is no other use for these streets except for the ferry on Market street. The city has never marked out and graded these streets as such. Broad street cannot be traveled for a considerable distance before the wharf is reached. So undefined and unknown were the boundaries of this portion of the streets that respondent, on the eighteenth day of May, 1883, provided by ordinance "that the city engineer shall cause stakes or monuments to be set so as to indicate the boundaries of the streets at the Tennessee river," and, as already stated, appropriated that section of the streets to free wharves. The respondent did not then consider that it was necessary to open the streets, but it provided that they should be defined and marked so that the public might use them as wharves. Now that they cannot be so used they are thrown open, and boats and goods warned away from them. These streets, except Market, and the wharf are precisely alike in grade, in appearance, in construction, and in all other respects. They are alike open to travel. Vehicles pass over the wharf just as they do the streets, and there is nothing to indicate where one begins or the other ends, unless it be the stakes provided for by the ordinance of May 18, 1883. The public have used the streets and the wharf indiscriminately, and for many years, and such use is the most convenient that can be made consistent with the objects to which the property has been devoted. No new public necessity or convenience has arisen to be met by a change in the character of the property. It was made into a wharf and the streets dedicated to its use as such. The city was not bound to accept the property, and has not done so by any formal act, unless the ordinance of May 18, 1883, be considered such formal acceptance, and that act was in derogation of the original object of the dedication. It is only by long

user that such acceptance can be presumed, and that user has been consistent with the original purpose.

At common law, a dedication does not pass a fee or freehold in the soil, nor give any right to the profits of the soil. It only serves as an estoppel *in pais* to the owner of the soil to assert any rights of possession inconsistent with the enjoyment of the uses to which the dedication was made. Washb. Easem. 220. A dedication may be made without writing by act *in pais* as well as by deed. It is not at all necessary that the owner should part with the title which he has, for dedication has respect to the possession, and not the permanent estate. Its effect is not to deprive a party of his land, but to estop him, while the dedication continues in force, from asserting that right of exclusive possession and enjoyment which the owner of property ordinarily has. Where, as in the case of a highway, the public acquire but a mere right of passage, the owner, who makes the dedication, retains a right to' use the land in any way compatible with the full enjoyment of the public easement. Id. 216; *Hunter* v. *Trustees*, 6 Hill, 411; *Tallmadge* v. *East River Bank*, 26 N. Y. 108; *Dubuque* v. *Maloney*, 9 Iowa, 455. The public takes no more than the owner gives. Where a plat of land has been dedicated as a public square, the authorities of the town were prohibited from making use of the land for purposes inconsistent with its use as a public square. *Abbott* v. *Mills*, 3 Vt. 521; *State* v. *Catlin*, Id. 530; *Pomeroy* v. *Mills*, Id. 279; *Cincinnati* v. *White's Lessees*, 6 Pet. 431. It follows that the municipal authorities cannot deprive the owner of land, who has simply dedicated to the public an easement to pass over it, of any use of the land dedicated not inconsistent with the full enjoyment of the easement.

In this case the result deducible from the foregoing principles has been admitted and strengthened by respondent's action. May 4, 1870, respondent passed the following preamble and resolution:

"Whereas, doubts exist in the minds of some as to whether the right of wharfage on the river front in Chattanooga belongs to the corporation or to the owners of the fee in the soil, such doubts being calculated to embarrass and delay the improvement of the wharves necessary to accommodate the trade of the town and increase its commerce; and, whereas, the owners of the fee have retained possession of the river banks ever since the establishment of the town, insisting upon their right of ownership of the wharves, and still contending for the same; and, whereas, in the opinion of the board of mayor and alderman, the rights of wharfage belong to the owners of the fee, subject only to the usual control as to rates of charges, kind of improvements to be made, etc.: It is, therefore, in order to put the question at rest,—

"Resolved, by the mayor and alderman of the town of Chattanooga, that they do hereby renounce all claim to the ownership of the wharves within the corporation, reserving the right to keep the same open as wharves in commercial towns may lawfully be kept open, to regulate tolls, charges about landing, and such other legal supervision and control as may be legally exercised over wharves which belong to individuals."

Chattanooga Ordinances 263.

This does not purport to surrender any right the city had, but must be regarded as a high character of testimony in the shape of a solemn and deliberate admission as to complainant's right to wharfage.

Market street differs, in one respect, from Broad and Chestnut. It is, and for many years it has been, used as an approach to a public ferry. This ferry is not at the foot of the street, but above it, and the east side of Market street has been used to go to and from this ferry. The end of the street ending on the river has been a landing for steam-boats and other water-craft, at which goods have been discharged from and loaded upon them. There has been no other use for this part of the street, except for the period during which a military bridge crossed the river at that point. There is no other use for it now. Like Broad and Chestnut, it runs to the river and stops there. It meets nothing but water-craft plying up and down the river, and carries to and from it nothing but the people and freights coming and going up and down the river. There is no inconsistency in its use as a landing for boats and freights, and by the public in a full and free use of the easement of passing over it to and from the river and its boats.

On May 22, 1867, the city passed an ordinance providing—

"That the two ferry landings within the corporate limits of the city shall be and are hereby established and located as follows: The upper ferry landing shall be above the foot of Market street, and as near thereto as convenient for the free passage and use of the ferry-boats, so as not to interfere with the piers of the destroyed military bridge. The other ferry landing shall be immediately below the paved wharf known as the steam-boat landing. All ferryboats are required to land and discharge passengers and property at one of the ferry landings hereby established. Steam-boats are hereby required to land between the ferry landings." Chattanooga Ordinances, 265.

This includes the streets in controversy.

From these regulations it appears that the city, up to the passage of the ordinance which led to this litigation, had made no distinction between the use of the streets and of the wharf upon the river front, and not only permitted, but required, that boats should land between the ferry landings, leaving them free to choose the point of landing so as not to obstruct the ferries, without regard to streets.

So far as that portion of Market street is concerned which has been used as an approach to the upper ferry, the city has the right and power to prevent its obstruction; but this part of the street does not extend to the river, as the ferry is above the foot of Market street. Nor can it be denied that the city has the power to protect and preserve the easement given to the public by complainant. It may prevent his inclosure of the streets, or his obstruction of them in anywise inconsistent with their free and full use, but it has no power to prevent his use of them in a manner consistent with the purpose to which they were dedicated, and especially when the usage of years, many of them, has confirmed and approved of that dedication. Should the changes and necessities of the future lead to other means of in-

gress and egress in this part of the city, should it become necessary to establish other ferries, or to build bridges across the river, whether the streets mentioned may be used for such purposes it is not expected that we should now decide, as the question has not arisen, and may never arise. Our determination of the controversy must be controlled by things as they have been and are, so far as they affect it.

I conclude that complainant and all others have the right to land and discharge cargoes in Market, Broad, and Chestnut streets, at the water's edge, and that respondent has not the authority to prevent it. But, so far as Market street is concerned, this right to land must be so exercised as not to obstruct the way to and from the upper ferry.