Judge IIise
delivered the opinion of the Court.
Tins suit in chancery was instituted by the “Town _ __ . r. , TYt.. , . of Newport,” against Samuel Winston and others, as Justices of the County Court of Campbell county, and against Charles J. Helm and others as lessees holding possession of the public buildings erected upon the public square in the town of Newport, under the
Campbell County Court. • The complainant allege^in substance that the public square in the town of Newport was set apart and devoted or dedicated, by the proprietors of the land, to the use of the inhabitants thereof, and of the public generally, at the time the original plan of the town was adopted and a survey and plat thereof was made in Februhry, 1792, by the agent of James Taylor,-- the owner of the land. That on the plat then made, the words “ Public Square,” was, at the time of its execution, written across the group of lots, upon which the public buildings were subsequently erected by the County Court, and hence it is insisted that before the county seat was located at Newport, the title to this public square was vested in the town, or rather that it was legally dedicated to the perpetual use of the inhabitants and public, by the original proprietors.
' Defense set up in the answer.
If the fact as alleged, be conceded that when the agent of the proprietor, originally, in 1792, laid off the town of Newport, he executed a survey thereof, and had a map or diagram prepared, representing the plan of that town, and that the words “Public Square,” was written across the lots in contest, on the map, as exhibited to those who purchased lots: in such case, the right of the town to the continued and perpetual use of the square for public purposes, could not be questioned. The principles approved in the case of the trustees of Augusta vs Perkins, (3 B. Monroe, 440,) of Rowan’s ex’ors. vs Portland, (8 B. Monroe, 249,) of the Trustees of Dover vs Fox, (9 B. Monroe, 200,) and of Wickliffe vs the City of Lexington, (11 B. Monroe, 163,) would be decisive of the question in that aspect of the controversy. But the defendants answer, and admit that a map of the town was executed in February, 1792, yet they deny in very positive terms that the block of lots in question were indicated on the plat or map of the town then executed, as a public square, or that the words “ public square,” were then written on the plat at any place, and they insist that this was not done until 1795, when under the direction of another agent of James Taylor, another survey was made, and a new map executed, on which the words “public square,” were, for the first time, written across the lots in contest, in view of an understanding or agreement between the proprietor’s agent, and the justices of Campbell county, that the county seat should be established at Newport. And it is in proof that a re-survey of the town of Newport was made in August, 1795, by John Roberts, and a new map of the town prepared, showing a considerable extension, of its limits, embracing other blocks of lots and containing two open squares, on one of which is written “Pubr lie Square,” on the other, “Bellvere Square,” without' any lines drawn across them sub-dividing them into> different lots with their numbers written on each, as was done on the plat dated in February, 1792. Th® *540 proof does not clearly establish the fact assumed in the bill of complainant, that the square in contest was dedicated for the public use and benefit of the town of Newport, ns far back as 1792. And it is distinctly denied by defendants, that there was any such dedication at that time.
A dedication of ground in the ¡Ulterior of a town 1o public use as a public square, by conveyance for such pm pose to the jnsfieesof the County Co'vt upon condition that it be used as a public square, passed no title for the benefit of the County upon the Temoval of the seat of justice, but a right vests in trust for the benefit of (be town for public pmposes: Wide-lif/e vs City of Lexington.
James Taylot in-1795 laid off Newport, and laid off a public square in 1796, mid conveyed the squat e to the Justices of Camp bell county, tq be held and use4 as a public square for public uses and purposes so long as the seat of justice continued at that place. In 1840, the seat of justice was removed from Newport: Held that the conveyance being intrust for public purposes, and the seat of justice being removed, that a trust resulted iq favor of the town for public jmrpo-. ses.
*540 But on the 1st September, 1795, after the re-survey was made of the town, the proprietor of the land, by his agent, executed a deed to the trustees of Campbell county, and their successors, by which, in consideration “"of the said justices and the justices of the Court of Quarter Sessions having fixed on Newport, at the confluence pf the Ohio and Licking rivers, for the seat of justice for said county, he conveyed to them and their successors the ground in contest as a public square, to be preprinted as they may think proper, for the use of public buildings.” A few days after this deed was made, to \yit; on the Tth day pf September, 1795 a new p]att or map, and written plan of the town was executed by the proprietor, through his agent, which was .acknowledged and recorded in April, 1796. The town was established by law in December, 1795. The county seat was removed from Newport in 1840, and the public square and the public edifices thereon were, after that time, no longer used for county purposes, or for the purpose ofholding therein the Circuit and County Courts. But notwithstanding its abandonment for all the public purposes and uses for which it was destined by the deed to them and their successors, yet the countyjustices still claim the title to the square, and have assumed the right to apply this public square, and the public edifices built thereon, to private purposes by renting the same to Helm and others, who hold possession under said trustees.
It must he conceded that there was a dedication of the square in contest in September, 1795, for public purposes at least, and'in the most solemn and authentic form by which it could be made, to wit; by a deed of conveyance from the proprietor, and that the subse *541 quent, if not the anterior, public use of the square for public purposes, for a period of forty-five years, or more, was enjoyed. It is true, by the inhabitants of the county of Campbell, in common with the citizens of the town of Newport, the County Court trustees and their successors, by the express terms of the grant., were vested with the naked legal title in .consideration that the seat of justice should be located at Newport, and upon the express trust that the square should be appropriated for the use of public buildings — public, not private. Of coarse the square and the public edifices which the County Court might erect thereon must be used and occupied alone for public purposes, and if abandoned by the County Court justices for the public purposes for which the square and buildings was destined. They have no legal or equitable right to apply them to private and individual uses and purposes, as they have done.
And upon their abandonment of the square and buildings, then a dedication for public use results by implication in favor of the-«nhabitants of the town of Newport, because, 1st; they have had from the year 1795, if not from before that time, until the attempt of the County Court to make a private appropriation thereof, the public use in common with Campbell county, of the square and public edifices thereon.
2d. Because the lots were sold and purchased in the Town of Newport surrounding the square, and in other parts of the town, upon the implied promise on one side, and faith on the ether, at least from the year 1795, that the public square existed, and should forever continue to exist as such, for the public use and convenience of the town. This view brings the case substantially within the scope of the principles approved in the cases referred to above, and especially in the case of Wicldiffe against the city of Lexington. There áre various untenable grounds assumed in the assignment of errors, and in the argument of counsel, upon which, a reversal of the decree of the Circuit Court is de *542 manded which it is not deemed important or necessary to notice, as they are considered to be unavailable by this Court.
Tibbatts and Helm, for appellants ; Morehead and Stevenson, for appellees.
Whereupon the decree of the Circuit Court is affirmed.