McKEE, Respondent, vs. CITY OF ST. LOUIS, Appellant.

1. On an inquest by a jury before the mayor of the city of St. Louis, under the charter of 1841, to assess the damages to owners of property by the opening of a street, several persons may be joined in one estimate and assessment, provided the sum assessed to each is ascertained by the jury.

2. In such a case, where one of the owners takes the proper steps and has the assessment set aside as to him, the setting aside will not enure to the benefit of the others, who have taken no such steps. The mayor, under that charter, had no power to set aside an assessment after the expiration of ten days.

3. Where A. dedicates land to the city for a street, and afterwards executes a conveyance to B. which includes the land so dedicated, parol evidence is admissible, in a proceeding between the city and B., to show an agreement by B., at the time of receiving the conveyance, that the street should remain open. Land may be dedicated to public use without a deed.

*Appeal from St. Louis Court of Common Pleas.*

*John C. Richardson*, for appellant. 1. The facts in this case show that there was a dedication to the public of the land sued for by the plaintiff. To effect a dedication, no particular words or acts are required, no donee or grantee is necessary, and no particular length of time is requisite for evidence of a dedication. *City Council of Lafayette* v. *Holland*, 18

La. Rep. *Brown* v. *Manning,* 6 Ohio, 303. *Brown* v. *McCandless,* 7 Ohio, 2d part, 136. *Beatty* v. *Kurtz,* 2 Pet. 566. *Cincinnati* v. *White,* 6 Pet. 432. *Wyman* v. *Mayor of New York,* 11 Wend. 562. 1 Hill, 190, 193. *Livingston* v. *Mayor of New York,* 8 Wend. 85. *Carlin* v. *Paul,* 11 Mo. Rep. 32. 2. If the property had not been dedicated, it was regularly condemned in July, 1842. By the ordinance, the mayor might, within ten days after any inquest, set the same aside for good reasons shown, but after that time, he had no power in the premises. The plaintiff took no steps to have the inquest set aside. The mandamus of the Circuit Court, granted on the application of Waddingham and Laveille, directing the mayor to set aside the verdict as to them, making no mention of the plaintiff, did not disturb the verdict as to him. The verdict was joint and several. In the case of *Coles* v. *Trustees of Williamsburg,* 10 Wend. 665, it was held that one party could not avail himself of any irregularity in the appraisement of the value of the land of others. 3. The court below erred in giving judgment for the value of the *fee* of the land taken for a street, with interest. This judgment can only be sustained on the supposition that the recovery and satisfaction of a judgment for trespass on land amount to a transfer of the title.

*F. M. Haight,* for respondent. Under the charter of 1841, (art. 6, sec. 1,) the city had a right to take the land of plaintiff for a street. 2. The measure of damages is the value of the land taken, and interest from the time it was taken. *Jacobs* v. *Louisville,* 9 Dana, 114, and cases there cited. 3. The land having been taken without compensation, the owner has his election to affirm the taking and sue for the value of the land, or bring ejectment and recover his land. This case falls within the principle in *Bloodgood* v. *M. & H. R. R. Company,* 14 Wend. 51, on p. 57, and cases there cited. 4. There are no facts in this case upon which to make the point that the land was dedicated to the use of the public. There is literally nothing except the words, "proposed street," on the

plan or survey of plaintiff's land, which amounts to nothing. There was no deed. It never had, in any manner, been made or recognized as a street. 16 L. R. 509. 5. The assessment was set aside as to McKee as well as the others. It was an entirety. The distribution was separate, but the amount each would receive must depend upon the amount assessed. 6. There was no evidence that McKee had any notice of the proceedings. 7. The deed of Payne to McKee cannot be altered or explained by parol evidence. If it can, there is no proof of dedication, but only of some agreement to dedicate.

SCOTT, Judge, delivered the opinion of the court.

This was an action begun by petition in the name of McKee, against the city of St. Louis, for appropriating 60 by 137 feet of ground in opening Jefferson, or north First street. The object of the suit was to recover the value of the ground appropriated by the city.

The defence admitted the appropriation of the ground by an ordinance of the city authorities, but stated that it was done after an assessment of damages in the manner prescribed by the charter in such cases ; and that the damages so assessed the city was willing and offered to pay. As a further defence, the answer stated that, in August, 1831, and before and since, a public highway covered the ground now claimed ; that the said highway had been used without objection, and with the knowledge and consent of the owner of the ground across which it extended, and that before or at the time of his purchase, stones or other monuments were set up, indicating the width of the highway.

The proceedings for the condemnation of the land show that, in August, 1841, in pursuance to the provisions of the charter, under the direction of the mayor, a jury was summoned to assess the damages to the plaintiff, Wm. Waddingham, and the representatives of Edward P. Wheeler's estate, by the extension of the street through their property. The first

jury did not agree. In September, 1841, another jury was sworn, who gave the plaintiff $60, Waddingham $30, and the estate of Wheeler, $30, for damages ; at the instance of the parties interested, this assessment was set aside by the mayor. In June, 1842, another venire was issued, and the jury, failing to agree, were discharged, and another summoned, who, on the 16th of July, 1842, in the presence of the parties, made an entire assessment of damages, amounting to $15 ; and of this sum, awarded to the plaintiff, $5 ; Waddingham, $5 ; and to the representatives of the estate of Wheeler, $5. On the 25th July, 1842, Waddingham and J. C. Laveille, agent for the heirs of Wheeler, made a written communication to the mayor, in which they protested against the finding of the jury, and asked that the verdict be set aside. The mayor refused to disturb the verdict, and rendered judgment thereon. McKee, the plaintiff, did not unite in this protest and motion. On the 27th May, 1843, a mandamus was awarded by the Circuit Court of St. Louis county to the mayor, directing him to set aside the verdict of the jury, or to show cause to the contrary ; and upon the return of the mayor to this writ, a peremptory mandamus was awarded. This proceeding of the Circuit Court was at the instance of Waddingham and Laveille. McKee took no part in it, and the mayor was directed to grant a new trial to Waddingham and Marshall Brotherton, who had succeeded to the rights represented by Laveille. The mandamus recited the fact that an assessment for fifteen dollars had been made, and how it had been distributed among the three property holders, as above stated, and directed that the assessment be set aside. In pursuance to the mandamus, the mayor set aside the verdict, and awarded a venire for another pannel. Under this, damages were assessd to the sum of four dollars, awarding two dollars to the plaintiff, and one dollar to each of the other parties. The plaintiff and the other parties moved the mayor to set aside this assessment, which he refusing to do, they applied for a mandamus, compelling him to do so. A mandamus was awarded by the Circuit Court, from which judg-

ment the city appealed to the Supreme Court, where, having failed to prosecute her appeal, the judgment of the Circuit Court was affirmed. The evidence, though somewhat contradictory, clearly established the fact, that there was a highway over the ground of the plaintiff for many years, until it was enclosed by him.

Thomas J. Payne, from whom the plaintiff purchased, testified that he had contracted with McKee and Wheeler to convey the land to them, when he should obtain a title from his cotenants ; that he came to St. Louis in the spring of 1831, and informed McKee and Wheeler that he had acquired the title, and proposed to them to lay off the tract into town lots. They agreed to lay it off according to the plat afterwards made by Brown, which was attached to the deed of the witness (Payne) to McKee, instead of complying with the title bond ; that Brown made the survey and plat for the purpose of enabling him to convey according to the agreement, and the plat was made with the consent of McKee and Wheeler, and the land was sold according to the plat. Brown placed stones, at the time of the survey, on the margin of the proposed street, thus :

```
          |   |
          |   | † Stone.
          |   |
 _____|   |_____
          | s |
          | t |
 McKee's  | r |  Land.
          | e |
          | e |
          | t |
          |   |
          | P |
 _____| r |_____
  Stone † | o |
          | p |
          | o |
          | s |
          | e |
          | d |
```

Payne, Wheeler and McKee were all present when the survey was made and the stones put up. The stones were put up to indicate the width and position of north Main street. The land was laid off according to the plat, by consent of Wheeler, McKee and Payne, (the witness,) and the street was laid out to correspond with north Main street. Witness sold land above and below, according to the plat. At the time of the sale to plaintiff, witness owned land north and above the land sold to McKee, and was concerned that Main street should be extended north and through plaintiff's land. The ground covered by the street was included in the conveyance, because

Wheeler and McKee requested that it should be so done, for the reason, as they stated, that if they made the street, they would be compelled to improve it; whereas, if it was included in the deed, they would not be compelled to improve it. The conveyance was made with the express understanding that a street should pass over the land, as indicated on the plat, and with a pledge that it should not be fenced up. McKee has admitted to the witness that the stones were set up on the ground to indicate the width of the street.

There was a judgment for the plaintiff for thirty-eight hundred dollars, the value of the land.

1. There is nothing in the charter of the city of St. Louis which prohibits the joining in one estimate and assessment all persons who may sustain damages by the opening of a street across their land, provided the sum assessed to each owner is ascertained by the inquest. Such a mode of procedure commends itself, both by its cheapness and convenience, and cannot injuriously affect the interests of any one concerned.

An assessment thus made must be regarded as a separate inquest for each owner of the land over which the street passes. No right can result to an owner to disturb the inquest, but so far as it concerns himself, because the damages accruing to others have been joined in the same estimate and assessment. Because one owner is dissatisfied with an inquest, that is no reason for presuming that all the others may be. If all the owners of the land over which a street may pass acquiesce in an inquest ascertaining their respective damages, save one, it would be strange, if his objection should have the force to overturn the assessment as to all. There is nothing in the relationship between the owners, nor any thing in the nature of the proceedings, which would warrant such a course. McKee was a party, and present at the assessment made on the 16th July, 1842. The fifth section of the sixth article of the charter of the city of St. Louis provides, that the mayor shall have power, for good cause shown, within ten days after any inquest shall have been returned to him, to set the same aside and

13—VOL. XVII.

cause a new inquest to be made. McKee never took the steps required by this section, to set aside the inquest made in July, 1842 ; but, from aught that appears, he acquiesced in it. The proceedings taken by Waddingham and those representing Wheeler's interest, cannot enure to the benefit of McKee. They only applied to the mayor to set aside the inquest, and on a refusal of their application, they only prayed the Circuit Court for a mandamus ; and the mandamus awarded enjoined the mayor to grant a new trial only to Waddingham and Brotherton. Nothing was done by McKee to relieve himself from the consequences of his neglect of the legal means to obtain a new inquest. Ten days had elapsed, and there was no warrant in law for making application for redress after that time. His rights and responsibilities in relation to that assessment were then fixed, with no authority in the law to alter them.

If this was the state of his rights with regard to the inquest, it cannot be maintained that they. could be restored or revived by the subsequent proceedings, to which he was a party, and which were set aside by the Circuit Court.

3. We feel little reluctance in coming to this conclusion, because, on the merits, we are of opinion, that the cause is against McKee, and that the various inquests made by the juries were right, upon the evidence preserved on the record, so far as they affected McKee. The proposition cannot be maintained that, as between the city of St. Louis and McKee, parol evidence was inadmissible to explain or vary the deed of Payne. We will not enquire whether Payne could have compelled McKee to open the street notwithstanding the deed, or whether McKee would have been guilty of a fraud in setting up the deed against such a demand on the part of Payne. Although, as between the parties, a deed may be conclusive, yet when third persons have an interest in ascertaining the nature of the transactions to which the deed relates, they are not precluded, by any principle, from inquiring into the real facts. This is like the case of the *King* v. *Scammondon*, 3 T. R., where it was held, that although an agreement may be prima facie evi-

dence of a fact, and although the parties themselves might have been bound by their own representation of the transaction, it was not binding upon strangers, to the exclusion of the real facts. 2 Stark. 575. If a lot in a city is sold, bounded by a street designated as such on a map made by the owner of the lands, in reference to which sales are made, although the street remains unopened under the authority of the corporation, the owner, when the street is subsequently opened, on the application of the corporation, will only be entitled to nominal damages. 2 Wend. 472. This goes upon the idea of an implied covenant with the vendee or dedication of the right of way. In this case the dedication was made by Payne, and McKee purchased from him, not only with a full knowledge of such dedication, but with a pledge to Payne, who was interested in having the way opened, that it should not be obstructed; McKee was present before the execution of his deed by Payne, when Brown made a survey and set up the stones which indicated the width of the street, and a copy of the plat of this survey accompanied the deed he received from Payne, and he subsequently admitted to Payne that he knew that the stones were set up to show the width of the street.

Thus it appears that Payne laid off the street and actually dedicated the ground, before he conveyed to McKee, and McKee not only purchased with a full knowledge of all these facts, but under a pledge that he would not obstruct the street. Land may be dedicated without a deed.

The other Judges concurring, the judgment will be reversed.