## COURT OF APPEALS.

CHARLES KELSEY, appellant agt. GAMALIEL KING and others, respondents.

It is not necessary, in order to effectuate a *dedication* of land by the owner, for a public street or highway, that he should part with the *fee* of the land.

Nor is it inconsistent with an effectual dedication, that the owner should continue to make any and all uses of the same, which do not interfere with the uses for which it is dedicated.

A *highway* (or street) is nothing but an *easement*. comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right of the public to do all the acts necessary to keep it in repair. This easement does not comprehend *any interest in the soil*, nor give the public the legal possession of it.

The use of highways (or streets) by any person, for any purpose, other than to pass and repass, is a trespass upon the person who owns the fee of the road.

The rights of an owner of land dedicated to the public use, were settled by this court in the case of *Williams* agt. *New York Central Railroad Co*. (16 *N. Y. R.* 97), where it was *held*, that the dedication of land to the use of the public as a highway, does not preclude the owner of the fee, subject to the public easement, from maintaining an action against a railroad company, which, without his consent, or an appraisal of his damages, enters upon and occupies such highway with the track of its road.

It is no answer to an owner of the fee of a street dedicated to public use, that the taking and use of the street by a *railroad company,* does not encroach upon the reserved rights of the owner of the fee, because the use of a street for the purposes of a railroad, is only one of the modes of enjoying the public easement.

The owner who dedicates his land for the use of a public street or highway, dedicates it to the public *without restriction.* The public acquire nothing beyond the mere right of passing and repassing upon the highway, and in all other respects the rights of the owner remains unimpaired. The dedication does not give to the public an *unlimited use.*

Neither has the *legislature* the power to encroach upon the reserved rights of the owner, by materially enlarging or changing the nature of the public easement. The constitution interferes and protects individual rights, by declaring that private property shall not be taken for public use, without compensation.

This doctrine does not interfere with the decision in the case of *The People* agt. *Kerr* (25 *How*. 258, *and* 27 *N. Y. R.* 188), as the question there was, whether the legislature had power and control over the streets of the city of New York, so that it could lawfully authorize a railroad to be laid upon the surface of such streets, without compensation to the owners of lots fronting on the streets, or to the corporation; it appearing that the city of New York was *seized in fee* of the land in all streets in front of the respective lots, *in trust*, to keep the same open and used as streets, in part by legal proceedings, and in part by dedication or cession.

It was there *held*, that as to the streets thus held in trust by the corporation, the legislature had a constitutional right to declare and define the uses and pur-

poses of the *trust* of the city; and the trust being *publici juris*, it was under the unqualified control of the legislature, and any appropriation of it to a public use by legislative authority, was not a taking of private property, so as to require compensation to the city, or to the owners of the adjoining lots.

A dedication of a piece of land in a *village* or a *city*, to the use of the public for a street or highway, does not grant a more *extensive interest* in the soil than a similar dedication not within those localities, or in the country, and does not authorize the use by the public, of the land so dedicated, for any purpose whatever.

When the property of individuals is taken for streets, and the city makes compensation for the property so taken, it *purchases* and pays for the right to appropriate the land to all such legitimate uses as custom and the public good require that a street should be appropriated to.

In construing the effect of dedication of land for a public street or highway, the same rules are to govern, whether it be for a highway in the country, or a street or highway in a village or city.

Where an owner of land dedicates it to public use for the purposes of a street in a city, and the city authorities proceed, pursuant to the statute, to ascertain the damages the owner will sustain, and the compensation to be made to him for the use of said land for the maintenance and construction of sewers therein; and that compensation has been ascertained in the manner provided by law, this court, in an action by the owner to restrain the construction of such sewers, cannot review such adjudication, or institute an inquiry into the principles upon which it was made, although it appear that *nominal damages* only were awarded the owner.

*June Term,* 1866.

THIS action was commenced in the city court of Brooklyn, for the purpose of restraining the defendants from constructing a sewer in a certain street in that city called Butler street, and from interfering with or molesting the plaintiff in the use and enjoyment of the territory comprised in the south half of said street; and that certain proceedings taken to open said Butler street, be declared null and void.

The plaintiff claimed in his complaint, that he was the owner of the fee of the south half of said street, and avers that prior to the proceedings therein mentioned, the same had been dedicated to the public as a public street, by this plaintiff, and because thereof, he was awarded by the said commissioners, for his damages on the pretended opening of said street, as aforesaid, nominal damages only.

     W. BRITTON, *for appellant.*
     A. McCUE, *for respondents.*

DAVIES, Ch. J.    By an act passed April 16, 1859, a board

of commissioners, called sewer commissioners, was organized in and for the city of Brooklyn, and by the third section of said act, the said board was authorized to take proceedings "to acquire lands and interest therein, for the construction and maintenance of sewers, when such sewer is proposed to be run through lands which are not a part of a public street or place."

The complaint also avers, that said commissioners prepared a plan for sewerage in said city, which provided for a sewer in said Butler street; that said plaintiff objected to such plan, among others, on the ground that the said street had not been opened, and that the location of said sewer in that street would involve the necessity of opening the same, by which was evidently meant, that the land embraced therein had not been taken for public use, and compensation made therefor. That thereupon the said commissioners presented a petition to the supreme court, for the appointment of commissioners to open said street.

The proceedings taken to open said street are also set forth in the complaint, and it was claimed that all said proceedings were illegal and void.

The judge who tried this action, without a jury, found the following facts:

1. That defendants King, Frank, Northrup and Lewis, are the sewer commissioners of the city of Brooklyn, duly apppointed under the acts of the legislature, passed April 15th, 1857, and April 16th, 1859; and that the defendants herein, Kenney and Holliday, at the time of the commencement of this action, were engaged in the construction of a main sewer in Butler street, between Columbia street and the East river, in said city, under a contract for that purpose, entered into between them and said commissioners, on the part of, and in the name of the city of Brooklyn. That said commissioners, under the provisions of the aforesaid acts, established a plan of drainage and sewerage for that part of the city of Brooklyn embracing Butler street, from Columbia street to the East river, and on the 21st day of December, 1859, filed a map of the district containing the

same, as required by said acts, on which said map the said sewer, as aforesaid, was designated as a main sewer.

2. That a main sewer through said street as aforesaid, was, in the judgment of said sewer commissioners, necessary and proper, and was by them in good faith so determined to be.

3. That neither at the time of filing said map as aforesaid, nor until the proceedings for opening said Butler street, as thereinafter specified, had said street been opened, but that said Butler street was laid out as a public street and highway, upon the commissioners' map of the city of Brooklyn, and filed.

4. That on the 15th day of December, 1859, said commissioners presented their petition to the supreme court for the appointment of commissioners to open said Butler street. That a notice of said intended application was given under section 8, of said act of April 15th, 1857, and that on the 16th of December, 1859, three persons were appointed said commissioners, and that copies of said petition, notice of said intended application, and order appointing said commissioners, were annexed to said complaint.

5. That said commissioners for the opening of said street, proceeded to make up their report in said matter, and presented the same for confirmation to the supreme court in July, 1860. That said plaintiff objected to the confirmation of said report, but that said report was then and there confirmed and annexed to the answer, and was a true copy of said order of confirmation.

6. That prior to the proceedings of said commissioners to open said street as aforesaid, the same, as far as the interests of the plaintiff herein is concerned, *had been dedicated to the use of the public as a public street*, by said plaintiff, and because thereof, he was awarded by said commissioners, on their said proceedings to open said street, nominal damages only.

7. That at the time of the commencement of this action, the plaintiff was a resident and property-holder and owner, in the city of Brooklyn; that he owned at the time of the

opening of said street, as aforesaid, and had during several years preceding, owned a majority in interest upon that portion of Butler street thereinbefore mentioned, being the south half of the said portion of the said street; that his property was within the district of assessment fixed upon by the commissioners who made the opening of said street, as aforesaid; that plaintiff now owns the fee of the south half of said portion of said street, as aforesaid, subject only to the rights of the public acquired by the opening of said street, as aforesaid.

And as conclusions of law, the judge found that said Butler street was at the time of the construction of said sewer by the defendants, a public street and highway of the city of Brooklyn, and had been regularly opened according to law.

2. That the plaintiff had no cause af action against said defendants, or either of them, and is not entitled to the relief prayed for in the complaint.

3. That the defendants are entitled to judgment in their favor against said plaintiff, dismissing the complaint with costs.

Judgment accordingly for the defendants, was affirmed at the general term, and the plaintiff now appeals to this court.

If the defendants had no legal right to use the street in question, for the purpose of constructing a sewer therein, it is made a question whether the plaintiff has resorted to the proper remedy to enforce the rights claimed by him. But it is not important to pass upon that question in the present case, in view of the conclusions arrived at. The parties have sought to obtain a decision upon their respective legal rights, without specially insisting whether the proper remedy had been adopted for ascertaining them. It will be convenient to ascertain in the first place, what rights the public acquired in the lands of the plaintiff from the dedication thereof.

It is found as a fact in the case, "that said street had been dedicated to the use of the public, as a public street, by the plaintiff." A street is another name for a road or

highway, in a village or city. (2 *Bouvier's Law D.* 446 ; 4 *Serg. & Rawle,* 106.) In the latter case Ch. J. GIBSON says : "In common parlance, the word street is equivalent to highway." This street was, therefore, dedicated to the use of the public as a public highway. The plaintiff by this act, only granted to the public the right to use this land as a public highway, and retained to himself the fee of the soil, and all other rights appertaing thereto, subject to such easement or servitude.

It is not necessary in order to effectuate a dedication, that the owner of the land dedicated, should part with the fee of the same. Nor is it inconsistent with an effectual dedication, that the owner should continue to make any and all uses of the same, which do not interfere with the uses for which it is dedicated. (*Washburne on Easements, and cases there cited.*)

"A highway," says SWIFT, J., in *Peck* agt. *Smith* (1 *Conn. Rep.* 132), "is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right of the public to do all the acts necessary to keep it in repair. This easement does not comprehend any interest in the soil, nor give the public the legal possession of it."

The use of the highways by any person, for any purpose other than to pass and repass, is a trespass upon the person who owns the fee of the road. (1 *New Hamp. R.* 16 ; *Babcock* agt. *Lamb.* 1 *Cowen,* 238 ; *Jackson* agt. *Hathaway,* 15 *Johns.* 447 ; *Adams* agt. *Rivers,* 11 *Barb.* 390.) In the latter case, WILLARD, J., says : "The public have no need of the highway but to pass and repass. If it is used for any other purpose, not justified by law, the owners of the adjoining land are remitted to the same rights they possessed before the highway was made. They can protect themselves against such annoyances, by treating the intruders as trespassers."

But the rights of an owner of land dedicated to the public use, were settled by this court in the case of *Williams* agt. *N. Y. Central Railroad Co* (16 *N. Y.* 97). It was there held that the dedication of land to the use of the public as a

highway, does not preclude the owner of the fee, subject to the public easement, from maintaining an action against a railroad company, which, without his consent, or an appraisal of his damages, enters upon and occupies such highway with the track of its road. The opinion of the court in this case, received the concurrence of six judges of this court, and the rule *starre decicis*, precludes us from questioning its binding character as an authority in point. SELDEN, J., in his able and elaborate opinion in this case, says : " It is conceded, that by the dedication, the public acquired no more than the ordinary easement or right to use the premises as a highway, and that the plaintiff continues the owner in fee in respect to the unsold lots, to the center of the street, subject only to the easement. But it is contended that the taking and use of the street by the railroad company, does not encroach upon the reserved rights of the plaintiff, because the use of a street for the purposes of a railroad. is only one of the modes of enjoying the public easement."

The learned judge proceeds then successfully to combat this doctrine, and after a review of the cases, says in reference to this question : " Is this sound doctrine ? Is it true that one who dedicates lands for a highway or street, dedicates it to the public without restriction ? I apprehend it is an assumption wholly unfounded, and contrary to a multitude of cases in which it has been held that the public acquire nothing, beyond the mere right of passing and repassing upon the highway, and that in all other respects, the rights of the original owners remained unimpaired. I will not dwell longer upon this case, as it will not be seriously, and cannot be successfully contended, either that the dedication of land for a highway, gives to the public an unlimited use, or that the legislature have the power to encroach upon the reserved rights of the owner, by materially enlarging or changing the nature of the public easement."

It was urged in that case, as it is in this, that it is convenient to use the public highways for the purpose indicated,

and that it is for the interests of the public that it should be so used. This argument is met and conclusively answered by Judge SELDEN, as follows : " It is the public interest supposed to be involved, which begets the difficulty, and it is just for the reason that the constitution interferes for the protection of individual rights, and provides that private property shall not be taken for public use without compensation ; a provision no less necessary than just, and one which it is the duty of the courts to honestly and fairly enforce."

It is urged upon us with earnestness, that the doctrine of this case has been impaired, if not overruled, by the subsequent case in this court of *The People* agt. *Kerr* (27 *N. Y.* 188). An examination of that case will show that there is no ground for such an assumption. The controversy in that case was as to the legislative power and control over the streets of the city of New York, and whether it could lawfully authorize a railroad to be laid upon the surface of such streets, and to be used for the propelling of cars thereon, without compensation to the owners of lots abutting on and fronting on said streets. The finding in that case established, for all purposes therein, that the city of New York is seized *in fee* of the land in all streets in front of the respective lots of the plaintiffs in that action, *in trust*, to keep the same open and used as streets, in part by legal proceedings, and in part by dedication or cession.

The only question, therefore, decided in that case was, that as to streets thus held in trust by the corporation of New York, for the use of the public, it was competent for the legislature, as the sovereign authority of the state, to declare and define the uses and purposes of the trust. And it was therefore held, that the trust of the city being *publici juris*, it was under the unqualified control of the legislature, and any appropriation of it to a public use by legislative authority, was not a taking of private property, so as to require compensation to the city, or to the owners of lots fronting on the street, to render it constitutional. EMOTT, J., in the opinion delivered by him, says : " In the case of an ordinary highway, all which the state or the public obtain

by their dedication or opening, is said to be an easement of a limited character. All but this remains in the original owner or his assigns, with all its incidents, subject to no restrictions or adverse rights, except this right of passage by the public. Every right of use and ownership, and every right of action for, and interference with either, which is not inconsistent with the free and common use of a highway, still belongs to the original owner of the soil. If the highway is closed, or the public rights relinquished, the land at once reverts in full and entire dominion. Such is the rule which has been applied to all titles acquired by the legislative appropriation of property to public or *quasi* public uses."

The authorities are uniform, that by dedication for purposes of a public highway, no rights are acquired by the public except those of passage and repassage over the surface of the soil, and such as are incidents thereto. (*Pearsall* agt. *Post*, 20 *Wend.* 111 ; *Same case*, 22 *Wend.* 425 ; *Jackson* agt. *Hathaway*, 15 *Johns.* 458 ; *Cortelyou* agt. *Van·Brunt*, 2 *Id.* 361 ; *Stackpole* agt. *Healy*, 16 *Mass.* 33 ; *Paley* agt. *Chandler*, 6 *Id.* 451 ; *Trustees, &c.* agt. *Auburn and Rochester R. R. Co.* 3 *Hill*, 567.)

In *Pearsall* agt. *Post* (*supra*, 20 *Wend.* p. 131), the court say : " The relative rights, both of owners and passengers in a highway, are perfectly understood and familiarly dealt with by the law ; subject to the mere right of passage, the owner of the soil is still absolute master ;" and at page 133, quoting a case from 3 *Watts*, 219, " the franchise of the public was to pass over the soil, and no more ;" and, " the amount of these cases is, that roads are made to be traveled on, and not to be occupied." And in the case in 3 *Hill* (*supra*), the court say : " They (the public), acquired no interest greater than a right of way, with the powers and privileges incident thereto. Subject to this easement, and this only, the rights and interests of the owner of the fee remain unimpaired."

Chancellor KENT says : " They (the owners) may carry water pipes under the highway, and have every use and

remedy that is consistent with the servitude or easement of a way over it, and with police regulations." (3 *Kent's Com.* 433.)

The learned author on easements, already referred to (*Washburn*), at page 196, lays down this doctrine : "So the owner of the soil of a way, whether public or private, may make any and all uses to which the land can be applied, and all profits which can be derived from it, consistently with the enjoyment of the easement. He may, as before stated, maintain ejectment to recover the land, and if the way is discontinued, he holds it again free from incumbrance. He may sink a drain or a water course below the surface, if he do it so as not to deprive the public of their easement." Citing the following cases : (*Perley* agt. *Chandler*, 6 *Mass.* 454 ; *Green* agt. *Chelsea*, 24 *Pick.* 71 ; *Pomeroy* agt. *Miles*, 3 *Vt.* 279 ; *Lade* agt. *Shepherd*, 2 *Strange*, 1004 ; *Adams* agt. *Emerson*, 6 *Pick.* 47 ; *Atkins* agt. *Boardman*, 2 *Metc.* 457.) These cases fully sustain the doctrine of the text. In the latter case, Ch. J. SHAW observes : "The owner of an estate in fee, by virtue of his interest and powers as proprietor, may make any and all beneficial uses of it at his own pleasure, and he may alter the mode of using it by erecting or removing buildings over it, or digging into or under it, without restraint. *Cujus est solum, ejus est usque ad cœlum.*

"If any other person has an easement in it, the owner has still all the beneficial use, which he can have consistently with the other's enjoyment of that easement. If the easement is a right of way, this consists in a right to use the surface of the soil for the purpose of passing and repassing, and the incidental right of properly fitting the surface for that use ; but the owner of that soil has all the rights and benefits of ownership consistent with such easement. All which the person having the easement can lawfully claim, is the use of the surface for passing and repassing, with a right to enter upon and prepare it for use, by leveling, graveling, ploughing or paving, according to the nature of the way

granted or reserved; that is, for a foot way, a horse way, or a way for all teams or carriages."

It would, therefore, seem to be most clearly settled by an unvarying current of authority, that in this act of dedication of this land to the public as a public street, the plaintiff still continued the owner of the fee of the soil therein, and entitled to all the benefits and advantges resulting therefrom, subject to the easement granted to the public. We have seen what the nature of that easement is, and no case has been found in the books, which warrants the assumption that by virtue of it, the soil of the street can be dug up or removed, or that the same can be occupied for any other purpose than a public highway. All the cases referred to, negative any such position.

But, it is urged that such a dedication of a piece of land, in a village or a city, to the use of the public, for a street or highway, grants a more extensive interest in the soil, than a similar dedication not within those localities, and authorizes the use by the public of the land so dedicated, for any purpose whatever.

This idea seems first to have been suggested by one of the senators, in the case of *Pearsall* agt. *Post* (*supra*), and was adopted and amplified by a learned justice of the supreme court, in the case of *Plant* agt. *Long Island R. R. Co* (10 *Barb*. 26). In referring to this case, the reasons given for the use of streets in cities, for all purposes which may be found convenient and useful, are that such streets have been taken and paid for. No allusion is made to the case of a dedication of land to be used as a public street or highway, and such a case is neither within the reason nor the doctrine of *Plant* agt. *Long Island Railroad Company*.

Judge EDMONDS says: " As far as we are aware, it has not been customary in this state, where the streets of cities have been appropriated to legitimate public uses for the promotion of health, trade or commerce, to make compensation to the owners of adjoining lands. The reason of this undoubtedly is, that the streets are laid out for such purposes, *as well as for highways*, and when the property of

individuals is taken for streets, and the city makes compensation for the property so taken, it purchases and pays for the right to appropriate the land to all such legitimate uses as custom and the public good require that a street should be appropriated to."

It is clear, therefore, that the remarks of the learned justice, and which were quoted and approved of in the opinion in this case, had reference solely to streets in cities, the fee of which had been taken by due process of law, and vested in the public authorities, and compensation made therefor. The street cases of New York are, therefore, not in point, and the principles adjudicated in them, furnish but little aid in solving the question presented in this case. It was well said of them in the case of *Bissell* agt. *N. Y. Central R. R. Co.* (23 *N. Y.* 61), "that they came before the court in a summary way, upon application to confirm or set aside the assessments, and ought not to be regarded as so high evidence of the law as judgments of the court pronounced after full trial, in an action according to the course of the common law."

Again, this latter case is an authority for another principle not to be lost sight of, namely, that in construing the effect of a dedication of land for a public street or highway, the same rules are to govern, whether it be for a highway in the country, or a street or highway in a village or city. It was said in the opinion in that case, that there was another very objectionable feature to those street cases, namely, that they seem to have inculcated the idea that there was a different rule of construction to be applied to such cases, to a deed of land in a city, from what there is to such a deed in the country. "Such a doctrine," says Judge MASON, in the opinion, " I affirm, has no foundation in principle, and will not, I apprehend, find any favor with this court." The dedication, therefore, by the plaintiff, of the land comprised in Butler street, to the use of the public as a public street, did not authorize the defendants to enter upon that land for the construction of a sewer therein.

It remains to be considered what rights they acquired by

the proceedings had and taken under the acts of April 15, 1857, and April 16, 1859. The constitution of this state declares that private property shall not be taken for public use without compensation, and that when private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law.

In the present instance, the law prescribed the manner of ascertaining the compensation to be made for acquiring the land of Butler street, and any interests therein, for the construction and maintenance of sewers. An application made pursuant to statute, to a court of record, which appointed three commissioners, who proceeded to ascertain and fix the compensation to be paid, and upon due hearing, this plaintiff having his day in court, and being heard in opposition thereto, the court confirmed the report of the commissioners, and thereupon the compensation to be paid this plaintiff for his interests in Butler street, for the construction and maintenance of sewers, became fixed and ascertained. Such compensation becomes fixed and final, and the city comptroller of Brooklyn, is authorized by law to pay on such confirmation, to the persons to whom damages may have been awarded in such report, the amount of such damages. (*Charter of Brooklyn*, § 16; *Laws of* 1850, *p.* 270.)

It is believed that it has been satisfactorily shown that the plaintiff, notwithstanding the dedication of the land of Butler street to the use of the public, for a public street, still had and retained an interest in the soil thereof, subject to such easement, and that the land so dedicated, could only be used for the purpose of a public street or highway. It is manifest that the corporate authorities of Brooklyn were of the same opinion, for they proceeded pursuant to statute to ascertain the damages the plaintiff would sustain, and the compensation to be made to him for the use of said land, for the maintenance and construction of sewers therein.

That compensation has been ascertained in the manner provided by law, and this court in this action cannot review that adjudication, or institute an inquiry into the principles upon which it was made. We are to assume it was a just compensation, and if the commissioners erred in fixing the amount to be paid at too small a sum, it is now too late to correct the error. The interest of the plaintiff in the soil of Butler street, has been taken in the manner prescribed in the constitution and by statute, for the purpose of maintaining and constructing sewers therein, and he was not, therefore, entitled to an injunction to restrain the defendants from proceeding to construct such sewer.

On this ground, the judgment of the supreme court was correct, and should be affirmed, with costs.