## T. J. CARTER AND O. P. MASON, RESPONDENTS, *v.* THE CITY OF PORTLAND, APPELLANT.

DEDICATION.—A dedication to public use may be by parol as well as by deed.

IDEM.—To constitute a dedication by parol, there must be some act or acts proved, evincing a clear intention to devote the premises to the public use.

IDEM—WHAT CONSTITUTES.—If one owning lands or having an equitable interest therein (subsequently acquiring the title thereto), lays out a town thereon, and makes and exhibits a map or plan thereof, with spaces marked streets, alleys, public squares, parks, etc., and sells lots with clear reference to said map or plan (though unrecorded), the purchasers of lots in said town acquire, as appurtenant thereto, every easement, privilege and advantage which the map or plan represents as part of the town. Upon the sale of lots with such reference to the map or plan, the dedication of the spaces marked streets, alleys, public squares, parks, etc., becomes irrevocable.

ACCEPTANCE AND USE.—Formal acceptance by the corporate authorities is *not necessary.* Where the *dedication is irrevocable, it need not be fol-lowed by immediate and continued use.*

NOTICE.—Whatever is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, or of the public, so as to put him on inquiry into ascertaining their nature, will operate as notice.

IDEM.—Notice should, with rare exceptions, be implied where one is shown to have such knowledge as would superinduce further inquiry in an honest, conscientious man.

APPEAL from Multnomah County.

The facts are stated in the opinion of the Court.

*W. W. Page, W. W. Thayer and O. P. Mason,* for Re-spondents.

*R. Williams,* for Appellant.

By the Court, MCARTHUR, J.:

This suit was originally instituted in the Circuit Court of the State of Oregon for Multnomah County, to quiet the title to certain parcels of land situate in the city of Port-land. The plaintiffs had a decree, enjoining the defendant from disturbing them in their enjoyment of the premises described in the complaint, and from setting up further claim thereto; and also for sixty dollars damages and for costs and disbursements. The cause is in this Court at this time to be tried *de novo,* upon the transcript and the depositions certified up therewith.

The complaint alleges in substance, that the plaintiffs are the owners in fee simple, and in possession of blocks num-bered 280 and 281, in the city of Portland, county of Mult-nomah and State of Oregon. That the defendant claims an interest or estate in said blocks adverse to plaintiffs, viz.: That said property was dedicated by some former proprie-tors of the city of Portland for public use, and that the said claim is a cloud upon plaintiffs' title. That on January 21, 1869, the defendant, under its said claim, wrongfully and unlawfully broke and entered upon said premises and broke and threw down plaintiffs' fence, enclosing the same, and damaged plaintiffs in the sum of one hundred dollars. That

on February 6, 1869, the defendant again wrongfully and unlawfully broke and entered the said premises and again tore down said fence, and damaged the plaintiffs in the further sum of one hundred dollars, and that the defendant threatens to repeat the said alleged wrongful acts. Wherefore, they pray that the title may be quieted in them; that the defendant be perpetually enjoined from repeating the said wrongful acts, and that they have and recover the amount of damage as alleged.

The defendant answered, denying the plaintiffs' possession, and alleging the said property to be public parks, claiming that the same had been dedicated by the former proprietors of said city, viz.: Stephen Coffin, W. W. Chapman and D. H. Lownsdale, who, in 1850, were the owners and in possession, and who caused two maps of said city to be made by one Brady. That these two maps were copies of the original plat of the city of Portland, made by the proprietors, upon which the real property in controversy was marked out and designated as the public parks. That said Coffin kept and retained one of these copies, and made frequent sales of lots and blocks of land in said city by reference thereto. That the city of Portland adopted said map in 1852, and that Coffin ratified it after that date. That in 1862 Coffin obtained from the General Government a patent for the land taken by him under the Donation Act of September 27, 1850, which embraced the premises described in the complaint. That the plaintiffs fraudulently combined and confederated with said Coffin to obtain and recover from said city the said parcels of land dedicated to the public use. That on December 4, 1867, said Coffin, combining and confederating with the plaintiffs, fraudulently made and published a map, or plat, designated as " Coffin's Addition to the City of Portland." That on this map the parcels of land in controversy were numbered as blocks usually are upon town plats. That on all prior maps the said parcels of land remained unnumbered, and were designated as public parks. That said pretended map was executed by said Coffin before the plaintiff Mason, who signed his name thereto as a witness, and who, be-

ing a notary public, took the acknowledgment of Coffin and wife thereto. That the said map was recorded in the record-book of deeds of Multnomah County, Oregon. That on December 28, 1867, the plaintiffs, having a full knowledge of all the facts alleged in the answer in relation to the dedication, obtained from Coffin and wife a deed purporting to convey to them the parcels of land in controversy, together with other parcels of land in said city of Portland, for and in consideration of the expressed sum of $3000. The defendant charges that the said plaintiffs did not pay said consideration, but that all the acts of plaintiffs and of Coffin, in relation to the transfer of said property, were fraudulent, and therefore void, as against the city, and all private persons, who purchased lots or blocks of said Coffin, prior to the making of the last-mentioned map.

The reply of the plaintiffs puts in issue the material allegations of the answer, and further alleges that they had purchased the property in good faith and for a valuable consideration, and without any knowledge, information or notice of the same having been dedicated to the public; that the map called "Coffin's Addition to the City of Portland," is the only map of record of said property; that the Brady map was never of record, and that neither of the plaintiffs had any knowledge of the existence of any such map or plat until long after their said purchase; that said Coffin was the owner of said blocks, and that plaintiffs, nor either of them, had any knowledge that there ever had been a dedication of, or an attempt to dedicate, the said property to public use.

The first question to be determined in this case is, did Stephen Coffin, the original owner of the land, and one of the proprietors of the town, dedicate these parcels of land to the public use, as alleged by the defendant in the answer?

Beardsley, J., in the case of *Hunter* v. *The Trustees of Sandy Hill* (6 Hill, 407), has furnished the most comprehensive definition of dedication to be found in the books, and he declares it to be "the act of devoting or giving property for some proper object, and in such manner as to

conclude the owner." It is a well-settled principle of the common law that property may be dedicated to the public use, and that the dedication may be by parol as well as by deed. (*Barclay* v. *Howell's Lessee,* 6 Pet. 498; *Dummer* v. *Jersey City,* 1 Spencer (N. J.), 86; *State* v. *Catlin,* 3 Vt. 530; *McKee* v. *St. Louis,* 17 Mo. 184; *Hunter* v. *Sandy Hill,* 6 Hill, 407; *Post* v. *Pearsall,* 22 Wend. 425, 454; *Dover* v. *Fox,* 9 B. Mon. 200.) It is also well settled that, to constitute a dedication by parol, there must be some act or acts on the part of the owner evincing a clear intention to devote or dedicate his property to some proper public use or private object. It becomes necessary, therefore, to ascertain from the testimony whether the acts of Coffin, if any he performed, evince a clear intention to dedicate the premises in controversy to the public use. In this connection it is proper to state that we have not regarded any of the testimony tending to prove the acts of Coffin, performed before the passage of the Donation Act, except that showing his participancy in procuring a survey, and in causing a certain map of the city of Portland to be made by one Short, and two copies thereof to be made by one Brady. The acts of Coffin, performed prior to September 27, 1850, the date of the Act referred to, standing alone, could not, in this case, be admitted to establish a dedication. The evidence of the dedication must be found, if at all, in the acts performed subsequently to that time, and the above exception is made for the reason that it is clearly proved that Coffin used one of the copies of the Short map, made by Brady, in describing and referring to lots and blocks in the city of Portland, sold by him after the passage of the Donation Act, and also after he had obtained his patent from the General Government in 1862.

The following facts are clearly established by the testimony: That during the year 1850, Stephen Coffin, Daniel H. Lownsdale and Wm. W. Chapman were in possession, and claimed to be the owners of what was known as "The Portland Land Claim." That in that year, and before the passage of the Donation Act, they caused a survey to be made of blocks, lots, streets, parks and other public

grounds of the city of Portland, and portions thereof were designated upon the ground by stakes and monuments. That they caused a map thereof to be made by one Short, and upon said map the parcels of land described in the complaint were designated, with others, as public parks, and were unnumbered. That prior to the said survey and mapping, there were settlements made upon the "Portland Land Claim" for the purposes of trade and commerce. That the said city was duly incorporated as a body politic for municipal purposes, by Act of the Legislature of the then Territory of Oregon, dated January 23, 1851, and has ever since remained incorporated. That in 1850, John Brady, by the order of Coffin, Lownsdale and Chapman, made two copies of the original map or plat of the city made by Short, upon both of which copies the property described in the complaint was marked and designated as public parks, and the spaces were unnumbered. That Coffin took possession of one of the copies made by Brady, and made sales of lots and blocks according to the same, up to December, 1867. That in April, 1852, the city of Portland, by its Common Council, adopted the map or plat drawn by Brady as the official map or plat of the city, and this act was known to said Coffin. That Coffin adopted, exhibited and used the Brady map from the time it was made, and after the date of the passage of the Donation Act, and after the adoption of the said map by the said City Council, and made sales of lots and blocks as designated on the same. That subsequently to the passage of the Donation Act, and prior to December 4, 1867, the date of the making of a certain map to be presently mentioned, Coffin sold certain lots of land on the blocks lying opposite to and facing the public parks, at the same time informing the purchasers that the lots purchased were situated adjacent to the public parks. That on December 4, 1867, Coffin made, published and recorded a map or plat designated as "Coffin's Addition to the City of Portland," attached to which was a written instrument explanatory thereof, by which he donated to the city all the streets as shown by said map or plat, and that on this map or plat the parcels

of land lying between East and West Park streets, which parcels of land were designated on the previous maps as public parks, were numbered respectively as blocks 276, 277, 278, 279, 280, 281 and 282.

The facts being as stated, we will proceed to an examination of the principles of law applicable thereto, in order to ascertain whether the acts of Coffin can be properly regarded as evincing a clear intention to dedicate, and whether the dedication when made became irrevocable.

In the *United States* v. *Chicago*, 7 How. (U. S.) 185, the principle is laid down that a mere survey of land, by the proprietor thereof, into lots, streets and squares, will not amount to a dedication without a sale, and it is well settled, by the weight of authority, that a sale of lots or blocks with reference to a given map or plat describing lots and blocks as bounded by streets, will amount to an immediate and irrevocable dedication of the streets. (*Rowan's Exrs.* v. *Portland*, 8 B. Mon. 232; *Augusta* v. *Perkins*, Id. 207; *Newport* v. *Taylor*, 16 B. Mon. 699; *Stone* v. *Brooks*, 35 Cal. 489; *Hannibal* v. *Draper*, 15 Mo. 634; *Schenley* v. *Commonwealth*, 36 Penn. St. 62; *Dubuque* v. *Maloney*, 9 Iowa, 450; *Winona* v. *Huff*, 11 Minn. 119; *Huber* v. *Gazley*, 18 Ohio, 18; and *Logansport* v. *Dunn*, 8 Ind. 378.)

The same doctrine applies to public squares and parks, and the dedication may be established in the same manner as in case of streets and alleys. (*Commonwealth* v. *Rush*, 14 Penn. St. 186; *Dover* v. *Fox*, 9 B. Mon. 200; *State* v. *Wilkinson*, 2 Vt. 480; *Watertown* v. *Cowen*, 4 Paige (N. Y. Ch.), 510; *Price* v. *Thompson*, 48 Mo. 363; and *Abbott* v. *Mills*, 3 Vt. 526.)

In the last case referred to it was held that whenever a public square or common is marked out or set apart as such by the owners, and individuals are induced to purchase lots or lands bordering thereon, in the expectation held out by the proprietors that it should so remain; or even if there are no marks upon the ground, but a map or plan is made, and lots marked thereon and sold as such, it is not competent for the proprietors to disappoint the expectations of the purchasers by resuming the lands thus set apart and appropriating them to any other use.

We are of opinion that if one owning land, or having an equitable interest therein, and subsequently acquires the title thereto, lays out thereon a town, and makes and exhibits a plan thereof with spare ground marked as streets, alleys, public squares or parks, and sells lots with clear reference to that plan or map, the purchasers of the lots acquire as appurtenant thereto every easement, privilege and advantage which the plan or map represents as part of the town. (*Dovaston* v. *Payne*, 2 Smith's Ldg. C. 224, 225; *Rowan's Exrs.* v. *Portland*, 8 B. Mon. 232, 237; *Barclay* v. *Howell's Lessees*, 6 Pet. 206, 207; *United States* v. *Chicago*, 7 How. U. S. 196; *Cincinnati* v. *White's Lessees*, 6 Pet. 431; *Dubuque* v. *Maloney*, 9 Iowa, 455; *Godfrey* v. *Alton*, 12 Ill. 35; *Asken* v. *Wynne*, 7 Jones N. C. 22; *Wilder* v. *The City of St. Paul*, 12 Minn. 203, 204, 211; *Trustees of M. E. Church of Hoboken* v. *Hoboken*, 33 N. J. Law, 21.)

From the facts and the law as stated, we are of opinion that Coffin made a dedication by parol of the parcels of land described in the pleadings to the public, to be used as public parks, and that the said dedication was subsequent to the date of the passage of the Donation Act, and prior to the date of the execution of the map known as "Coffin's Addition to the City of Portland," and also prior to the date of the execution of the deed of Coffin and wife to the plaintiffs, under which the plaintiffs claim.

We pass now to the consideration of the questions of acceptance and user; for it is claimed by plaintiffs' counsel that nothing less than a formal acceptance, by the corporate authorities, of these particular parcels of land, or an actual entry upon, use and improvement thereof, by said corporate authorities, will amount to an acceptance, and that an acceptance was necessary to make the dedication irrevocable.

The facts tending to show an acceptance on the part of the city are the following: That on April 29, 1852, the City Council, by proper resolution, adopted the Brady map as the city map or plat, and ordered the Mayor to appoint a special committee, with instructions to call upon the proprietors of the city of Portland, and obtain from them a bond for or deed of all the public streets in said city, and a deed

of trust for all the lands donated to benevolent societies, public schools, public squares, etc. That a copy of the said map was made for the public use, that the same was kept and used by the city, and that on March 28, 1866, an ordinance was passed by the City Council, authorizing the Committee on Streets and Public Property to contract for the improvement of the public parks west of Seventh and south of Salmon streets, which includes the land in controversy.

If the position assumed by plaintiffs' counsel be correct, there could be no dedication to an unincorporated town or village, either by deed or in parol. The law is, that a parol dedication is not a grant; it is a right created in favor of the public, and is in the nature of an *estoppel in pais*. There need be no grantee *in esse* to take the fee, nor is it essential that the legal title should pass from the owner. (*Beatty* v. *Kurtz*, 2 Pet. 256; *New Orleans* v. *United States*, 10 Pet. 662; *Dubuque* v. *Maloney*, 9 Iowa, 450; *Kelsey* v. *King*, 33 How. Pr. 39; *Town of Paulet* v. *Clark*, 9 Cranch, 292; *McConnell* v. *Lexington*, 12 Wheat. 582.)

In *New Orleans* v. *United States*, just cited, the Court says that it is not essential that this right of use should be vested in a corporate body; it may exist in the public and have no other limitation than the wants of the community at large. We are of opinion that the acts of the city, by its council, show an acceptance on its part of the parcels of land in controversy, if such formal acceptance were necessary. But a formal acceptance is not necessary. The acts of the inhabitants in the purchase of lots, the improvement of streets, etc., and their use, conclude the owner, and the corporation may insist upon every right which any of its inhabitants may have acquired by virtue of the original dedication. (*Watertown* v. *Cowen*, 3 Paige (N. Y. Ch.), 514; *Dovaston* v. *Payne*, 2 Smith's Ldg. Cases, 237, 241; *Wyman* v. *Mayor of New York*, 11 Wend. 499; *Langley* v. *Gallipolis*, 2 Ohio St. 107; *New Orleans* v. *United States*, 10 Peters, 713.)

The purchase of lots and improvement of streets, with reference to the Brady map or plat, were acts of acceptance of the streets and other public places, and indeed of the

entire plan of the city as displayed upon the map. The
fact that the city had not, before the alleged purchase by
plaintiffs, used and improved the parcels of land in contro-
versy, cannot redound to the advantage of the plaintiffs.
It was not necessary that these particular pieces or parcels
of land should have been improved or used prior to said
alleged purchase in order to entitle the city to hold them.
They were shown by the map adopted by Coffin, and by the
city, to be public parks, and numerous and valuable private
and public improvements were made with reference thereto,
and thereby the dedication became irrevocable. As regards
the improvement and use of public parks or squares, in
like situation, it is sufficient if they are put to the use to
which they are dedicated when the public convenience re-
quires. In *Rowan's Exrs.* v. *Portland,* above cited, a case
somewhat analogous to the one under consideration, the
Court says that: "The dedication having been made and
proved by the map, and the sales and conveyance of lots
with reference to it, did not require a subsequent user to
establish or prove it, and we are not sure that it could have
been defeated or lost by non-user even for twenty years,
except so far as it was ousted by an adverse use for that
period. To say that a dedication to the use of the future
town and of the public, made when the site of the town
was in a state of nature, would be lost if not followed by
immediate and continued use, or should be limited to the
extent to which it was thus used, would deprive the dedica-
tion of its intended value and would make it a mockery."
The local authorities or the corporate guardians are the
ones whose duty it is to improve, adorn and embellish the
public parks, and where the dedication is irrevocable, as
we hold it to have long since become in this case, they are
the judges as to the time when the public health and public
pleasure demand the use and enjoyment of the lands dedi-
cated. The original owner, though he has the *naked fee,*
has no right whatever to interfere with the premises except
where the use becomes absolutely impossible, or where the
corporate authorities seek to put the premises to some
other use than that to which they were originally dedicated.

Then he, as well as any lot-holder of the city, may proceed in equity to enforce the use according to the original dedication. (*Barclay* v. *Howell's Lessees*, 6 Pet. 498; *Williams* v. *The Church*, 1 Ohio St. 478; *Webb* v. *Moler*, 8 Ohio, 552; *Board, etc.*, v. *Edson*, 18 Ohio St. 221; *Harris* v. *Elliott*, 10 Pet. 25; *County* v. *Newport*, 12 B. Mon. 538.)

We pass now to the consideration of the question as to whether the plaintiffs had notice of the claim of the public upon this land prior to their alleged purchase from Coffin and wife. The testimony shows that they knew that Coffin was the original proprietor of that portion of the city wherein the land in controversy lies. They knew also that he, together with the other proprietors, had laid out and established a town upon the "Portland land claim." They knew also that a town had been built upon said claim, which extended west beyond the public parks. They knew also that it had been built upon a plan indicated upon some other map than the one made by Coffin in December, 1867, and that no improvements had been made upon the "Park Blocks," as they are commonly called, throughout the entire length of the Coffin claim, while the blocks on both sides of the parks had been extensively improved. The testimony also shows that both plaintiffs were residents of the city prior to the date of the making of the map of "Coffin's Addition to the City of Portland." That Carter was a member of the City Council in 1866, when the ordinance authorizing the "Committee on Streets and Public Property" to contract for the improvement of the public parks was passed. That deeds from Coffin, conveying nearly all the lots and blocks lying in that part of the city, had been executed to different parties prior to December, 1867, and these deeds were of record in the proper office, and many of the lots and blocks were improved and occupied. That the map, according to which the conveyances were made, was the Brady map, copies of which were upon the walls of the public offices of the city and county, to which plaintiffs frequently resorted in transacting their business. That plaintiff Carter had been engaged in buying and selling real estate in said city, and had known this property for six

or seven years; had owned property described by the Brady map; had in 1866 executed a deed to one Stinson to lot 4 in block 216 and lot 6 in block 238, according to the "maps and plats of the city of Portland," and that said lot 4 in block 216 faces the row of public parks, but is north of the line of Coffin's claim. That plaintiff Mason wrote the said deed to Stinson, and took the acknowledgment thereof in September, 1866. That Carter had heard of the park blocks and the Brady map before he purchased from Coffin in 1867. That both plaintiffs had engaged in conversations, in which the claim of the city to the property in controversy was alluded to, before they purchased. That plaintiff Mason, as notary public, took the acknowledgment of the Coffin map in December, 1867. That prior to said date he had seen the Burrage map, and had a copy of the McCormick or Directory map in his office, upon both of which the parcels of land in controversy were unnumbered and were designated as public parks, and were displayed as upon the Brady map. Finally, that the premises described were generally understood to be public property.

Passing from the facts, let us consider the law touching notice. It is a well-settled principle that to constitute notice, it is not necessary that it should be in the shape of a distinct and formal communication, and it will be implied where a party is shown to have had such means of informing himself as to justify the conclusion that he has availed himself of them. It has frequently been decided by the American as well as the English Courts, that whatever is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, so as to put him on inquiry into ascertaining their nature, will operate as notice. (*Le Neve* v. *Le Neve*, 2 Leading Cases in Equity, 160; *Barnes* v. *McChristie*, 3 Penn. St. 67; and *Bohlman* v. *Carter*, decided at the last term of this Court.)

Indeed, we think that notice should, with rare exception, be implied where a party is shown to have such knowledge as would superinduce further inquiry in an honest, conscientious man. In *Rowan's Executors* v. *Portland*, hereinbefore cited, Marshall, C. J., in delivering the opinion

of the Court, uses the following language in relation to notice, which is singularly applicable to the case under consideration: "The notoriety, actual as well as legal, of the acts involved in the making of a town, the laying out of the town upon the land, the representation of it upon a map open to public inspection, * * * the advertisement and sale of lots according to that plan, the conveyance of them by recorded deeds referring to the plan, the subsequent inclosure and improvement of some of them for business or residence, and, in fine, the actual existence of a town upon the land, must be considered as giving to the world such notice of the plan, to which all these acts and facts must have reference, as to preclude the possibility of afterwards acquiring from the original proprietor, or of asserting with a good conscience any right or interest inconsistent with those which, according to the plan of the town, are appurtenant to the lots, and are, therefore, granted to or held for the lot owners or citizens, and the local or general public." Applying these principles of law to the facts stated, we feel fully warranted in concluding that the plaintiffs had sufficient knowledge of the matters referred to, to charge them with full notice of the claim of the city of Portland to the parcels of land in controversy, prior to the date of their alleged purchase.

It was urged by plaintiffs' counsel that a dedication could not be predicated of the use of the Brady map by Coffin, for that the same was not of record. It is unnecessary to discuss this proposition at length, for it must be obvious, from the views already expressed, that to support a dedication of streets, alleys, public parks, etc., it is not necessary to show that the map upon which such streets, alleys, public parks, etc., were displayed, was recorded, but simply that it was used and referred to by the proprietor in selling the lots and blocks to which the streets, alleys, public parks, etc., are appurtenant.

The remaining questions are unimportant, and as the views already expressed are decisive of the case, they need not be discussed.

It follows that subsequent to the passage of the Donation

Act, September 27, 1850, and prior to the date of the execution and recording of the map of "Coffin's Addition to the City of Portland," December 4, 1867, Coffin dedicated the land in controversy to the public use; that before the date of the deed from Coffin and wife to plaintiffs, December 28, 1867, the dedication had become irrevocable; that the plaintiffs purchased with full knowledge of the pre-existing rights of the public in and to said parcels of land, and therefore took only the naked fee and acquired no rights or equities which they can assert against the public use to which the premises were dedicated by their grantor.

The decree of the Court below must be reversed and the suit dismissed at plaintiffs' cost.

Decree reversed.